No. 28,368.

HUGH McCORMICK, *Appellant,* v. THE CITY OF KANSAS CITY,
*Appellee.*

(273 Pac. 471.)

Opinion filed January 12, 1929.

*W. W. McCanles,* of Kansas City, Mo., for the appellant.

*L. S. Harvey, Clyde C. Glandon* and *John C. O'Brien,* all of Kansas City, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This action was brought under the workmen's compensation act. Hugh McCormick, an employee of Kansas City, a municipal corporation, was accidentally injured on March 19, 1924, while working in a steam-heating plant, which is a part of the water and light department of the city, operated for trade and gain. He was an engineer who assisted in operating the plant which was some distance away from the city hall, and from which steam was furnished to heat the city hall and the fire department. At the close of plaintiff's evidence the defendant filed a demurrer against it upon the ground that the plant in which the plaintiff was working

was maintained to furnish heat to the officers and employees occupying the city hall who were there engaged in the governmental functions of the city, and that the case did not come within the compensation act. In considering the demurrer the court reviewed the evidence produced by plaintiff and made the following findings of fact:

"The defendant, Kansas City, Kan., is a municipal corporation, and that as such defendant owns, maintains and operates a water and light department, and is engaged in connection therewith in business trade and gain; that it manufactures, furnishes light and power to the citizens of Kansas City, Kan., and receives pay for said service; that it furnishes heat, light and power to various manufacturing plants and establishments operating in said city and receives pay for said services.

"The court further finds, that on the 19th of March, 1924, the plaintiff was in the employ of the said defendant; that he was running an engine in the boiler room, maintained and operated by the defendant at Sixth street and Armstrong in Kansas City, Kan.; that said boiler room was maintained by said defendant for the purpose of furnishing heat to the city hall in Kansas City, Kan.; that the city water and light department maintained its main office in said city hall; that the water and light bills for water and light service furnished by the defendant are paid at the office in said city hall; that the commissioner of the water and light department is housed in the city hall; that in the basement of the city hall the said water and light department keep a large amount of the supplies of said department, the water meters are kept and repaired there, the light bulbs, wires and supplies are kept at said place and are sold by the city to purchasers at said place; the water and light department keep trouble men in the basement, to make repairs upon various appliances in the water and light department in said place and for the purpose of going out on calls to the various parts of the city to make repairs in connection with said department; that the basement is heated from the boiler room in which the plaintiff was working while in the employ of the defendant.

"The court further finds that on the aforesaid date, to wit: the 19th of March, 1924, the plaintiff while shoveling coal from the upper deck in said boiler room was caused to slip and fall and receive a serious injury, which caused him to be totally incapacitated for all time; that he suffered said injury by accident growing out of and in the due course of his employment.

"The court further finds that after the plaintiff's injury he made all necessary, due and legal demands upon said city for the payment of compensation.

"The court further finds that after the plaintiff was injured as aforesaid that the defendant paid him his full wages from the date of his injury up to the 15th of June, 1924, and thereafter paid him one-half of his wages until the 15th of October, 1925, and paid the plaintiff's hospital bill; in all, the defendant paid him the sum of sixteen hundred seventy-five dollars ($1,675).

"The court further finds that prior to the bringing of the aforesaid action the plaintiff consented to an arbitration of his claim, and the defendant refused to arbitrate.

"The court further finds that if plaintiff had been entitled to recover under the workmen's compensation act of Kansas, that he should recover

for total incapacity amounting to sixty-two hundred twenty-five dollars ($6,225), less the sixteen hundred seventy-five dollars ($1,675) already paid him, or the sum of forty-five hundred fifty dollars ($4,550), but the court found that at the time plaintiff was injured he was not working under and subject to the terms of the workmen's compensation act of Kansas, and was not entitled to recover compensation for said injuries, and for that reason the plaintiff is denied a recovery."

The demurrer was sustained and judgment was rendered for the city.

The facts fairly raise the legal questions argued by the plaintiff, to wit: That the work in which the plaintiff was engaged was hazardous in its nature and was service for a department of the city engaged in business for trade and gain, which fairly brings the claim of plaintiff within the provisions of the compensation act. He contends that the work was directly and intimately connected with the water and light department so that it became a part of it. There is the further contention that the transactions between the plaintiff and the defendant city amounted to an agreement to be governed by the terms of the workmen's compensation act, the defendant having paid plaintiff for eighteen months under the terms of the act.

Proceeding to the consideration of the question involved in the case, we come first to the concession that the city through the water and light department is engaged in the exercise of its proprietary functions, in that it manufactures and furnishes to its citizens and customers light and power, and receives pay for the services rendered, and also furnishes heat, light and power to various manufacturing plants for compensation. It is therefore conducting employment for business, trade and gain within the meaning of the statute (R. S. 44-505), and is liable for compensation to injured employees if the plaintiff comes within the class protected by the statute. There can be no question, either, that the work being done by the plaintiff when injured was hazardous in its nature, and that he is entitled to the protection of the act if his relation to the proprietary functions exercised by the city brings him within the scope of these functions. It is contended that the relationship is not sufficiently close to justify him in claiming compensation. It is said that the boiler plant in which he was working was used only to furnish heat to officers and employees of the city housed in the city hall, and in that respect the city was only exercising a governmental function, and cannot be regarded as carrying on a

trade or business for gain, and therefore the workmen's compensation act does not apply. It is probable that the greater part of the heat furnished from the boiler plant in which plaintiff was employed was used for the benefit of officers and others conducting the governmental functions of the city, but it is clear that a real and substantial part of it was used for the benefit of those engaged in carrying on the proprietary functions of the city. As the findings of the court show, the main offices of the water and light department which was conducting a business for gain were in the city hall, where the accounting was done and all bills for water and light sold to customers were paid. The commissioner in special charge of that department kept his office in the city hall. The department kept a large amount of the supplies in the building, as well as a shop to repair water meters used in the proprietary business of the city. In that building the department kept a stock of light bulbs, wires and like merchandise which the city sold to customers coming to its market. A number of employees of the department, designated as trouble men, were housed in the building, who were engaged in making repairs on the water and light system, which was conducted for profit when trouble or need of repairs on the lines arose, and when calls for help came in they went out and corrected the trouble and made repairs, and thus helped to promote the business conducted for gain. The boiler plant in which plaintiff was working supplied service to all of these officers and employees of the department acting in the proprietary capacity as well as to those performing governmental functions in the city hall. From the undisputed facts the employment of plaintiff was not only an incident of that carried on by the water and light department, but it had a direct and intimate relation to it and was an essential part of the proprietary function of the department. To bring the work within the compensation act, it is not necessary that it should be the principal part of the service of the business of the department. It is enough if the work is so related to the business of the department as to be incidental and appropriate to the carrying on of the entire business. In *Smith v. Boiler Works Co.*, 104 Kan. 591, 180 Pac. 259, a compensation case, an employee who was a night watchman in a boiler factory was killed by burglars while he was in the performance of his duties. Compensation was sought for a dependent. The employer resisted, claiming that the hazard was not incidental to and did not inhere in the operation of a boiler plant. In deciding the case the court said:

"Regarding for the moment the operating of machinery as the acme of the employment, all that combines to make it such, everything integrated with it essential to effective functioning—other conditions being fulfilled—is included in the hazard." (p. 593.)

The principle, it was said, was illustrated by a New York case where a drug company was engaged in the hazardous business of manufacturing drugs and chemicals. An employee of the company who acted as porter, elevator man, and as general handy man about the premises, was injured while acting as a carpenter in building a shelf near an elevator well. It was contended that this work, although incident to the employment and necessary to carrying on the business, was not so immediately connected with the hazardous characteristic feature of the business as to make it compensatory. In meeting this contention the court said:

"We feel perfectly secure, however, in holding that where, as in this case, an employee is injured while performing an act which is fairly incidental to the prosecution of a business and appropriate in carrying it forward and providing for its needs, he or his dependents are not to be barred from recovery because such act is not a step wholly embraced in the precise and characteristic process or operation which has been made the basis of the group in which employment is claimed." (*Matter of Larsen v. Paine Drug Co.*, 218 N. Y. 252.)

It is not essential to a recovery that the work of plaintiff should have been independent of and unconnected with the performance of governmental functions. In the course of the opinion in *Todd v. Drainage District*, 109 Kan. 754, 201 Pac. 1096, it was said:

"So the nonperformance by a city of a class of duties described as 'ministerial' is held to constitute actionable negligence, even though such duties are connected with the performance of governmental functions." (p. 757.)

The question was dealt with in *Wendt v. Industrial Insurance Commission*, 80 Wash. 111, where a company operating a department store had employed a carpenter to make shelving and alterations and repairs in the store. The store, although not of itself a hazardous business, had in connection therewith a repair shop with some tools and machinery operated by an electric motor maintained by the company. The employee turned on the power to run a grindstone so that he might sharpen a chisel, and a high voltage passed through his body and killed him. The main business of the company was the operation of a store, but it operated the shop in which machinery was employed that rendered it hazardous. The defendant insisted that the plaintiff could not recover unless it was

shown that the company was engaged in extra hazardous work in respect to the whole business or of some department thereof. The court said:

"If we could so construe the act that the extra hazardous character of the employer's business was to be determined by the business he was principally engaged in, we might accept the finding of the commission; but the act, as we have seen, recognizes the fact that the same employer may conduct different departments of business, some of which fall within the act, some of which do not. And in this connection it matters not which is the principal business and which is the incidental business. If the employer conducts any department of his business, whether large or small, as an extra hazardous business within the meaning and defined terms of this act, his workmen would come within the class designated by the act, and be entitled to the protection of the act. Such interpretation, we believe, falls within the letter as well as the spirit of an act that, because of its humaneness and declaration of a new public policy, should be interpreted liberally and broadly, in harmony with its purpose to protect injured workmen and their dependents independent of any question of fault." (p. 117.)

The Washington act differs in some respects from our own, but the principle stated applies here. See, also, *Phillips v. Kansas City L. & W. Rly. Co.,* 126 Kan. 133, 267 Pac. 4; *State v. Business Property Security Co.,* 87 Wash. 627; *Cox's case,* 225 Mass. 220; *Matter of Fogarty v. Nat. Biscuit Co.,* 221 N. Y. 20; *Matter of McNally v. Diamond Mills Paper Co.,* 223 N. Y. 83; 1 Schneider on Workmen's Compensation Law, 246.

The question whether a part is so related to other parts as to constitute and be regarded as an entity is illustrated by the cases where cars going from one point in the state to another point in the same state are placed in a train consisting largely of interstate cars, and the question was whether a brakeman killed in coupling the cars onto the train was engaged in interstate commerce. It was held that he was so engaged, that such commerce could not be separated into its several elements and the nature of each determined regardless of its relation to others, but should be considered as to the relationship and bearing of the acts upon interstate commerce. (*Thornbro v. Railway Co.,* 91 Kan. 684, 139 Pac. 410, and cases therein cited.)

We think the work in which the plaintiff was engaged in the boiler plant was so directly connected with the operation of the water and light department and the prosecution of the business as to bring his claim within the compensation act. The defendant cites *Udey v. City of Winfield,* 97 Kan. 279, 155 Pac. 43, as an

authority against the allowance of compensation, but that case is clearly distinguishable from this as to the character of employees involved. There the employer could not be regarded as within the act unless it was shown that fifteen persons were employed in the plant, and this number could not be regarded as so employed unless mere clerical officers in the office of the city clerk should be counted. It was held that they could not be counted as employees of the plant, and hence compensation was denied.

The trial court found that if plaintiff was entitled to compensation he should recover for total incapacity amounting to $6,225, less the amount already paid to him, which was $1,675, to wit: the sum of $4,550.

It follows that the judgment of the court must be reversed and the cause remanded, with directions to enter judgment for the plaintiff in the sum of $4,550, with the interest due thereon. It is so ordered.