No. 32,685

Mrs. W. Y. Kirkpatrick, *Appellee*, v. Yeamans Motor Company and The Lumbermen's Mutual Casualty Company, *Appellants*.

(54 P. 2d 960)

Opinion filed March 7, 1936.

*A. L. Berger* and *James M. Scott*, both of Kansas City, for the appellants.

*James K. Cubbison* and *Blake A. Williamson*, both of Kansas City, for the appellee.

The opinion of the court was delivered by

Hutchison, J.: This is an appeal by respondent and its insurance carrier from a judgment rendered in a compensation case, affirming the award granted the widow of a deceased night watchman who was killed while crossing a street which ran in front of the property he was watching for the respondent.

There is no question about his being an employee of the respondent at the time he was killed, nor that he was working under dual employment and not joint employment, the other employer not being a party to the action.

The appellants present the questions involved in the appeal under the following three headings:

"1. The court erred at the trial in affirming the findings of fact and con-

clusion of law and the award of the compensation returned by the workmen's compensation commissioner. The evidence discloses that the deceased was remotely employed from the principal place of business; that there was no joint employment of the deceased; and that only by dealing in independent presumptions can it be said that the deceased was injured while in respondent appellant's employ.

"2. There was no joint employment of the deceased by respondent company.

"3. Under the law, deceased was injured and killed and his death occasioned by an accident that did not 'arise out of and in the course of his employment' with respondent."

The evidence shows that the respondent was a Ford dealer with its principal place of business five miles from the place where the accident occurred; that in its business it did repair work on automobiles and used power machinery to do such repair work and had employed five or more workmen for more than one month prior to the accident, but not all the employees were engaged in the mechanical or machine work or any part of the hazardous part of the business. Other employees were engaged as salesmen and watchmen. There was no evidence that the respondent had ever filed an election not to operate under the workmen's compensation law.

In addition to the principal place of business, the respondent maintained a used-car lot at Seventh and Tauromee streets in Kansas City, Kan., to which it took its used cars to be stored and put on display for sale. The deceased was engaged by the respondent as a night watchman at the used-car lot. Two salesmen were at the lot during the day to care for the cars and to make sales and exchanges. There was no specifically hazardous work conducted at the used-car lot.

The deceased was employed by the respondent to watch this used-car lot at night for the sum of $6 per week. He was to visit and inspect the lot two or three times every hour, beginning at eight p. m. and ending at eight a. m. He was also employed by the Davidson company, which had a similar used-car lot just across Seventh street, and he had been for several months prior to his engagement by the respondent serving the Davidson company as night watchman of its used-car lot at a salary of $5 per week.

There was a shanty or house on the Davidson lot where the deceased usually stayed during the night in cold weather, this accident occurring on February 21, 1935. The evidence shows that

he usually made a trip from the shanty on the Davidson lot around the three sides thereof, and from the south end at Seventh street he crossed over to the respondent's lot and went around it on the three sides and back to Seventh street, and then across the street to the shanty or house on the Davidson lot.

No witness saw the accident. The deceased was found dead on the street at about 5:30 in the morning between the center line and west curbing, with his head to the south, his right leg broken about seven inches above the knee, some broken ribs, skull fractured and other injuries. The right shoulder was out of place. The injuries to the face and head were on the left side. Blood marks on the pavement and a comb and little mirror were found near the body, and his hat was about twenty-five feet north of the body and about four feet from the west curbing. The respondent's lot was on the west side of the street.

The evidence shows that the respondent knew that the deceased was the night watchman for the Davidson people and watched their used-car lot. They also knew that the deceased stayed in the shanty or house on the Davidson lot across the street from the respondent's lot when he was not making his trips around the lots, and this dual employment was satisfactory to the officers of the respondent company.

The commissioner after hearing the testimony gave an extended opinion in writing in which he made findings of fact and applied the law to the same, and followed the opinion with an award of $1,400 for the widow. After the consideration of the case in the district court, upon the appeal from the commissioner's award, the district judge made the following findings as to facts, and concluded by applying the law thereto and affirmed the award of the commissioner:

"The deceased in this case was engaged at the time of the accident (which it is agreed was the cause of death) in dual employment for Davidson Brothers and the Yeamans Motor Company as a night watchman and the findings of the commissioner were from the evidence in the transcript that the deceased met with the accident while he was crossing Seventh street between two vacant lots used for sales of second-hand motor cars. . . . The deceased was in the line of duty for which he was employed and was being paid for his services at the time of the accident, and, therefore (in the court's opinion), was within the provisions of the act."

Under our limited jurisdiction in compensation cases as to the facts, we find there is sufficient substantial evidence to support the findings of the trial court which adopted the findings of the commissioner.

Appellants direct attention first to the remote connection of the deceased with the principal place of business of the respondent and claim that only by dealing in independent presumptions can it be said that the deceased was injured while in respondent's employ. It does not seem to be the distance between the repair shop of the respondent and the sales lot upon which appellants rely, as much as the lack of anything but presumptions that connect the deceased with the business of the respondent at the time he was killed. It was held in the compensation case of *Supica v. Armour Co.*, 131 Kan. 756, 293 Pac. 483, that—

"Circumstantial evidence may be used to establish the claim, and it is not necessary that the circumstantial evidence should rise to that degree of certainty as to exclude every reasonable conclusion other than that found by the trial court." (Syl. ¶ 2.)

This was a case where a night watchman was killed by falling through the roof on a train shed, and the respondent insisted that in the absence of direct evidence that he was acting in the course of his employment the respondent could not be held. This ruling was approved and followed in the case of *Kearns v. Reed*, 136 Kan. 36, 12 P. 2d 820, where the workman at a coal chute frequently went to the depot or roundhouse for information as to the approaching of another engine, and his body was found a few minutes after the arrival of a train on one of the tracks he was crossing.

In *Tierney v. Telephone Co.*, 114 Kan. 706, 220 Pac. 190, a workman for a telephone company had to go from place to place to charge batteries and occasionally to assist linemen along the highways. While going in an automobile with a superior officer he broke his arm in cranking the automobile, and it was held that—

". . . it does not defeat an injured workman's claim to compensation that his particular injury was not caused by some hazard peculiar to such employment; it is sufficient if it was incidental to such employment." (Syl. ¶ 3.)

The same rule was applied in *Pegg v. Postal Telegraph-Cable Co.*, 129 Kan. 413, 283 Pac. 58, to a messenger boy injured while riding his bicycle to deliver a message by being struck by an automobile, where it was not contended that his part of the business was hazardous, but it was held that the injury was incidental to such employment.

In the opinion in the case of *Smith v. Boiler Works Co.*, 104 Kan. 591, 180 Pac. 259, it was said:

"The deceased workman was night watchman in a boiler factory, and was killed by burglars while in the performance of his duties. It is said the

hazard was not one which inhered in or was peculiarly incident to operation of a boiler manufacturing plant, and consequently, that the injury did not arise out of the employment.

"A fair statement of the rule under the rather limited statute of this state is that the injury must result from some danger peculiar to the hazardous character of the employment. This does not mean, however, that in a factory classified as extra hazardous because of the use of dangerous machinery, none but machine operators or employees working in proximity to machinery may have compensation. Regarding for the moment the operating of machinery as the acme of the employment, all that combines to make it such, everything integrated with it essential to effective functioning—other conditions being fulfilled—is included in the hazard." (p. 593.)

In the case of *Phillips v. Kansas City, L. & W. Rly. Co.*, 126 Kan. 133, 267 Pac. 4, the deceased, while employed by a railroad company as ticket agent and station keeper, was fatally injured by blows on the head inflicted by an unknown person, and the evidence was held sufficient to support a finding that the injury arose out of the employment.

In *Kennedy v. Hull & Dillon Packing Co.*, 130 Kan. 191, 285 Pac. 536, a traveling salesman for a packing company several miles from the packing plant came in contact with an electric wire of high voltage, and it was said that it could not be held that there was no causal connection between the employment and the injury.

Both parties refer to the familiar case of *McCormick v. Kansas City*, 127 Kan. 255, 273 Pac. 471, where the city was running an industrial plant furnishing light, heat and power in the exercise of its proprietary functions, and the city officers occupied offices in the city hall, which was heated by a nearby boiler plant, and the one in charge of such plant was accidentally injured. In a compensation proceeding it was held:

"The work he was doing was so closely related and incidental to the proprietary business carried on by the water and light department of the city as to be a part of it, and that plaintiff is entitled to compensation, although the heat furnished for the city hall was provided in part for the benefit of other officers and employees exercising the governmental functions of the city." (Syl.)

In this last-mentioned case and several others above cited, the workman was not injured on the premises where the hazardous work was being conducted.

Along the line applicable to the facts herein, it is said in 71 C. J. 752:

"Within the general rule governing 'street accidents,' where the work of an employee requires that he be in the public streets or on the public highways

harm which results to such employee from the presence or operation of vehicles in the streets may constitute an accident arising out of and in the course of his employment, although compensation may be denied where there is no causal connection between the accident and the employment."

Here the respondent knew that the deceased was watching the lot across the street and occupying the shanty or house across the street, and in order to comply with the agreement to inspect the respondent's sales lot two or three times every hour, to cross the street would not only be incidental to the performance of his work but necessary thereto.

The inference or presumption that the deceased was going west to the south corner of the lot of the respondent and was looking after and at the lot of the respondent when the accident occurred is strong and natural and is based upon evidence of his custom and habit in making the rounds by going that way. It is also reasonable and natural that he ceased looking at and after the Davidson lot, for the time being, when he commenced to cross the street. Besides the broken leg, marks on the clothes and other evidence of the accident are very convincing that he was going west toward the lot of the respondent as usual.

The next point raised by the appellants is that there was no joint employment. Both sides agree on this question of fact that the employment of the deceased was not joint but dual. He was not serving two masters at the same time, but alternately, and one at a time. It is said in 1 Schneider on Workmen's Compensation (2d ed.):

"The subject of dual employers, employments, and business enterprises is as a rule not covered by specific provisions in the acts and the few decisions relating thereto are not entirely in accord. . . . The fact that one is employed in a dual capacity by the defendant and another does not make him any the less an employee of the defendant. . . ." (pp. 324, 325.)

The text then cites an instance of a delivery man engaged by two employers to deliver packages and had delivered all the packages belonging to A and was on his way to deliver a package belonging to B when he .was injured. B was held liable. The text also cites an incident of a night watchman who had contracts with six independent concerns to act as watchman, where he was held to be an employee of each of them and could recover compensation from the one on whose premises he was injured. (See *Western Metal Supply Co. v. Pillsbury,* 172 Cal. 407, 156 Pac. 491; *Murphy Supply Co. v. In-*

*dustrial Comm.*, 206 Wis. 210, 239 N. W. 420; and *Bamberger Electric R. Co. v. Industrial Com.*, 59 Utah 257, 203 Pac. 345.)

Appellants upon the third question involved cite our statute, R. S. 1933 Supp. 44-508, on the meaning of the term "arising out of and in the course of employment,"· as excluding those accidents which occur while the workman is on his way to assume the duties of his employment and on his return therefrom, and decisions in support thereof which we think would be applicable in this case if the work and duties of the deceased did not begin until he reached the corner of defendants' lot. If the workman had been erecting a fence on the lot, that theory might apply, but the duties of the deceased were watching the lot, which would begin when he came in view of it and when he left the other lot across the street.

Appellants cite *Alvarado v. Rock Crusher Co.*, 109 Kan. 192, 197 Pac. 1091, where the workman quit work in a quarry on account of rain and went to a tent 150 yards from the quarry and was there injured; also cite the case of *Haas v. Light & Power Co.*, 109 Kan. 197, 198 Pac. 174, where the workman's sole duty was to oil machinery at night in an electric power house, but he left this part of the plant and went into another room where he had no business whatever and was there injured, and of course in both these cases it·was held that the injuries did not arise out of and in the course of the employment.

The case of *Sellers v. Reice Construction Co.*, 124 Kan. 550, 262 Pac. 19, was where the workman was helping with a ditching machine, but thought his foreman's automobile would be in danger, where it was parked, not from the ditching work but from the approaching of a truck heavily loaded with timbers, and he attempted to· save the automobile by removing it across a railroad track and was killed in being struck by a train.

The case of *Rush v. Empire Oil & Refining Co.*, 140 Kan. 198, 34 P. 2d 542, was where the workman for an oil company, in a little town of the company, was employed to take care of the horse barn and "was provided with a team and wagon, and with these he followed a regular route laid out for him, going through the alleys and about town gathering waste paper and trash." In a rain and windstorm that occurred, he took the team to a garage which blew down and injured him. It was held it did not arise out of his employment.

In the case of *Fair v. Golden Rule Refining Co.*, 134 Kan. 623, 7 P. 2d 70, also cited by appellants, a similar holding was made in

a matter of a progressive impairment of health resulting in paralysis arising from the cranking of a car.

The facts and circumstances in these and many other cases in this connection are, we think, very different from those in the case at bar, and we have no hesitancy in concluding, as did the trial court, supported by the many decisions cited in the earlier part of this opinion, that the injury and death in this case did arise out of and in the course of the employment of the deceased.

.The judgment is affirmed.