No. 33,500

ALBERT V. WETLAUFER, *Appellee*, v. FRED C. HOWSE, *Appellant*.

(71 P. 2d 879)

Opinion filed October 9, 1937.

*Leon W. Lundblade,* of Beloit, for the appellant.

*Ezra Branine, Alden E. Branine* and *Fred Ice,* all of Newton, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: The appeal in this case is taken by a respondent in a workmen's compensation case from a judgment affirming an award made by the compensation commissioner in favor of the claimant and against the respondent for injuries received in an accident.

There is no question about an accident having occurred and the claimant having been injured. The principal legal question now involved is, Did the accident which caused the injuries to claimant arise out of and in the course of his employment? An additional question interposed is whether the employer and the employee were acting under and subject to the provisions of the workmen's compensation law at the time the accident and injury occurred. The last question may, however, be answered promptly from a practical admission in the record of the existence of that relationship at the beginning of the hearing before the compensation commissioner, and this can be supplemented by reference to the language of the statute

(G. S. 1935, 44-505), which includes a "motor transportation line" among the hazardous trades or businesses to which the law applies.

The record shows that the respondent was engaged in the oil-distributing business, and the claimant was working for respondent in March, 1936, as a driver of an oil and gas transport truck. Both parties resided in Beloit, Kan. The transport truck belonged to the respondent. He had more than one, and he had been employing claimant at different times since July, 1935, paying him by the trip a little more than a cent a mile, but he did not have use for him all the time. When he needed his services he sent for him and gave him instructions about the trip he was to make. On this occasion the respondent directed claimant to take this particular transport truck at Beloit, go to Potwin, get a truckload of gas and deliver it at Scottsville. Claimant went to Potwin, loaded the gas and started back. About three miles south of Newton, at four o'clock in the morning of March 15, the rear end of the trailer transport swung off to the side so that the back trailer wheels caught the edge of a bridge and pulled the trailer wheels loose from under the tank. It blocked the traffic at the bridge and claimant used his flares to stay and flag the traffic, and he asked one man who was passing to telephone the respondent at Beloit and tell him of the accident, and received word in reply that another driver and transport would be sent to take his load. Later a Mr. Lyon came and loaded the gas in his transport and they pulled the injured transport to the side of the road. No injury occurred there except that to the transport. Claimant and Mr. Lyon then went to the nearest filling station and Lyon telephoned to the respondent about the injured transport and was directed to borrow a pole trailer and take the injured transport to the shop at Salina. They went together to the home of Mr. Branson, the owner of a pole trailer, and borrowed it, agreeing to return it by noon the next day.

The testimony here differs a little as to the orders given by the respondent over the telephone, whether it was for Lyon to borrow the pole trailer and take the injured transport to Salina, or for "you boys" to do so. At any rate it required two separate drivers to get the gas and the injured transport, with the assistance of the pole trailer, back to Salina. They left the injured transport and the pole trailer at Salina and both went together on the Lyon transport with the gas to Beloit and tried for an hour at Lyon's house to reach the respondent, but in vain. Claimant went to his home, leaving word with Lyon to call for him in the morning if he was

to go with him to take the pole trailer back. Lyon later had a talk over the telephone with the respondent, but nothing was said about claimant going with him to take the pole trailer back, and Lyon says no orders were given either him or claimant by respondent about taking the borrowed pole trailer back, but Lyon called for the claimant very early the next morning and claimant arose from bed, dressed himself and went with Lyon to Scottsville. They delivered the gas and then went on to Salina where they loaded the pole trailer on the Lyon truck and they both took it back to Mr. Branson, arriving there before noon as they had agreed. Two extra men were there and they helped Lyon and claimant unload the pole trailer. When Lyon had loosened one of the chains holding the trailer on the truck the other chain slipped, and the trailer fell on claimant, causing the injury complained of.

Applying the law to these facts, we are asked to decide whether this is a "personal injury by accident arising out of and in the course of employment" (G. S. 1935, 44-501). Appellant insists that certainly the workmen's compensation law could not cover accidental injuries where the employee was doing something voluntarily, without any orders or request of the employer and without pay. Counsel for appellant frankly admits that an exhaustive search failed to discover a decision squarely in point, but cites many cases which he urges have a bearing on the question involved. Among them is the case of *Iott v. Mosby*, 126 Kan. 294, 268 Pac. 109, where a mechanic employed to repair automobiles was injured while riding on the fender of an automobile in making a road test, but the decision adverse to the mechanic was based upon the old clause, then in force, of the injury occurring on, in or about his employer's place of business.

Another case cited is *Corpora v. Kansas City Public Service Co.*, 129 Kan. 690, 284 Pac. 818, where the workman was injured by an accidental fall while putting on his overalls in the dressing room just before time to go to work. Counsel draws from this decision two separate and distinct requirements under the statute: one that the injury must arise out of the employment, and second that it must be sustained in the course of the employment, urging that the second requirement could not possibly be met under the facts in the case at bar.

Another case cited by appellant is *Kearns v. Reed*, 136 Kan. 36, 12 P. 2d 820, where the workman at the coal chute loading passing

engines with coal absented himself to go to the depot or roundhouse to get the line-up of the arrival of engines and was accidentally injured in crossing the intervening tracks. The appellant claims a distinction between that case and the one at bar because of the fact that such was shown to have been his custom and within the knowledge of the foreman.

Another case cited by the appellant is *Gamble v. Board of Public Utilities*, 137 Kan. 227, 19 P. 2d 729, where an elderly employee, who had been in the employ of the defendant company and its predecessor for many years as a machinist helper, had returned to his work after a brief illness from an outside accident. He had not been assigned to any particular work but was kept on the pay roll and occupied a chair in the main room of the plant. This main room had a tile floor, and he fell from the chair, injuring his shoulder, and died about a month later. It was there held that—

". . . no recovery can be had unless it is shown by the claimant that the injury arose out of the employment of the injured workman to which the accidental injury can reasonably be traced or is an incident of it. The burden is on the claimant to make such proof." (Syl.)

Appellant insists that claimant in the case at bar was out of a job when his transport was damaged, and until he was called upon to make another trip he was not in the employ of respondent, citing the testimony of Mr. Lyon, who said claimant told him he would go with Lyon in taking the trailer back as he had nothing to do the next day. This is not, however, the only feature to be considered in this connection. There are duties incident to the employment which are implied or arise upon an emergency regardless of orders, requests or compensation. When claimant's transport truck broke down at the bridge many duties devolved upon him in the way of protecting and saving the property of his employer as best he could. The borrowing of a pole trailer was one of them, even without an order from the employer. The return of the borrowed trailer was an incident of the employment, regardless of any order otherwise unless he was thereby entirely relieved of every responsibility in that connection.

Appellant cites 28 R. C. L. 797, where a Massachusetts case is discussed and a construction is placed upon the terms arising out of the employment and in the course of the employment. This opinion so treated and discussed concludes as follows:

"It need not have been foreseen or expected, but after the event it must

appear to have had its origin in a risk connected with the employment, and to have flowed·from that source as a rational consequence." (*In re McNicol,* 215 Mass. 497.)

Two cases are cited from other states, one, *Morey v. City of Battle Creek,* 229 Mich. 650, 202 N. W. 925, where the team ran away on the workman's way home from work and injured him, and *Kneeland v. Parker,* 100 Vt. 92, 135 Atl. 8, where a teamster was preparing his own team for hauling logs at a specified price per thousand feet and was injured. In each case the ruling was against the claimant because the injury was not incurred in the course of the employment.

The case of *Fairchild v. Prairie Oil & Gas Co.,* 138 Kan. 651, 27 P. 2d 209, was where a pumper on an oil and gas lease was killed by being struck by pieces of a tree on an adjoining lot which was being cut down by others, and the pumper was there to see that none of the property of his employer was injured by the falling of the tree, and it was there held:

"Where an employee receives injuries while employed where he may reasonably be while performing his usual duties or other acts incidental thereto, which other acts are fairly connected with, and, in the judgment of the employee, are for the protection of the property and for the benefit of the business of the employer and are not so foreign to his usual duties as to amount to an abandonment thereof, such injuries are sustained in and arise out of his usual course of employment." (Syl. ¶ 1. See, also, *Thomas v. Manufacturing Co.,* 104 Kan. 432, 179 Pac. 372, and *Kirkpatrick v. Yeamans Motor Co.,* 143 Kan. 510, 54 P. 2d 960.)

Along the line of being incident to or growing out of an emergency, as stated in the Fairchild case, the following portion of the text in 28 R. C. L. 810 is appropriate:

"An accident cannot be said not to 'arise out of' the employment merely because the injured employee at the time was not engaged in doing what was specially prescribed to him; but if in the course of his employment an emergency arises and, without deserting his employment, he does what he thinks necessary for the purpose of advancing the work in which he is engaged in the interest of his employer, and in so doing he suffers injury, the accident arises out of the employment."

In 71 C. J. 667 it is said:

"The performance of any act made necessary to the employer's business by reason of an emergency is within the scope of the employee's duty. Thus, in contemplation of law, an employee does not go outside of the course of his employment if, when confronted with a sudden emergency, he steps beyond his regularly designated duties to save himself, or another employee, from

danger, or to save another person from harm on his employer's premises, or to save his employer's property."

The following statements in the text of L. R. A. 1916A are pertinent:

"A servant does not cease to be in the course of his employment merely because he is not actually engaged in doing what is specially prescribed to him, if, in the course of his employment, an emergency arises, and, without deserting his employment, he does what he thinks necessary for the purpose of advancing the work in which he is engaged in the interest of his master." (p. 56.)

"The fact that a workman is engaged by the hour or by the piece does not necessarily prevent recovery of compensation for injuries received while not actually engaged at his duties." (p. 59.)

In the case at bar we think the accidental injury occurring in unloading the borrowed pole trailer can reasonably be traced to the employment, which in the emergency at the bridge necessitated and authorized the borrowing thereof, and was therefore an incident to such employment. The borrowing of a pole trailer and the returning thereof can, after the accident at the bridge, easily be seen to have had their origin in a risk connected with the employment and to have flowed from that source as a rational consequence, regardless of lack of compensation for the time spent in returning it. In line with the opinion expressed in the Fairchild case, the borrowing and returning of the pole trailer were incidents and duties fairly connected with the performance by the employee of his usual duties as a driver of a gas transport truck and in the proper exercise of his judgment either with or without orders so to do, when there were no positive orders by the respondent to the contrary, and such borrowing and returning of the pole trailer were for the protection of the property and for the benefit of the business of the employer, and therefore the accidental injuries sustained in the returning of the borrowed trailer arose out of and in the course of the employment.

The judgment is affirmed.