No. 36,700

GEORGE ABBOTT, a Minor, by JESSE ABBOTT, Father and Natural Guardian, *Appellee,* v. SOUTHWEST GRAIN COMPANY and HARTFORD ACCIDENT AND INDEMNITY COMPANY, *Appellants.*

(176 P. 2d 839)

Opinion filed
January 25, 1947.

T. F. *Railsback,* of Kansas City, argued the cause, and *Russell L. Hazzard,* of Dodge City, was with him on the briefs for the appellants.

O. A. *Wilson,* of Jetmore, argued the cause, and was on the briefs for the appellee.

The opinion of the court was delivered by

PARKER, J.: This was a proceeding under the workmen's compensation act. At the hearing before the compensation commissioner the parties stipulated the respondent was operating under the act, the claimant was in its employ at a weekly wage of $48 or $8 per day, the Hartford Accident and Indemnity Company is the insurance carrier, and oral notice of the alleged accident was received by the respondent. It is now conceded a sufficient written claim was made within time. The only evidence adduced was by the claimant. Based on it both the commissioner and the district court granted an award, the all-important finding of the latter being that on the date alleged claimant sustained personal injury by accident arising out of and in the course of his employment with respondent while directly engaged in carrying out its orders in the furtherance of its business. Thereupon the respondent and the insurance carrier appealed.

Except for evidence to which we shall hereinafter make specific reference the factual situation on which the claim is based, can be summarized thus: Respondent operates a grain elevator in the south part of Jetmore, and Lester Abbott, a brother of the claimant, who lived in the northwest part of that city about one-half mile from where it is located, was its local manager; the claimant,

a minor, worked at the elevator, and lived at Lester's home; his duties were to do whatever was to be done around the elevator; during the harvest season there were no regular working hours; on the 25th day of July, 1945, while harvest was in progress, Lester and George quit work at the elevator at about 8 p. m., leaving two hatches, or doors, in the roof of the storage bin open; from the elevator they went directly to Lester's home for supper; after the evening meal George was instructed by Lester to go back to the elevator and close the two hatches; while on the way to perform that task, and as he went through the business part of the city, he induced a friend to take him to the elevator in an automobile; George and his friend never reached their destination; as they were proceeding in that direction the automobile in which they were riding collided with an unlighted parked truck and from this collision claimant suffered injuries which resulted in the partial loss of the use of his right arm and the institution of the present proceeding.

Particular portions of the evidence relied on by claimant as justifying the finding of the trial court to which we have heretofore referred will be pointed out.

Among other things Lester Abbott, who testified as a witness for the claimant said that during harvest season there were no regular working hours for anyone around the elevator; frequently the force would work until 9 or 10 o'clock; sometimes they would go home to supper and come back; the day's work wasn't finished until they got everything done which could be done that day; on days when they went home for supper and then worked after supper George usually went back with him.

The record also credits him with having made this statement: "Sometimes after they considered the day's work done, someone would come in with a load of wheat and say 'would you come down and dump me,' and they would. When you are working at an elevator the work isn't always ever done, and if anything developed at the elevator that needed to be done it was part of the day's work and they did it."

Specific questions propounded and answers made by him as a witness read:

"Q. After you had gone home, did there any duty that should be performed come to your mind that should be performed that day, Mr. Abbott? A. Yes.

"Q. Just what was that? A. Well, we were eating supper, and George

said that he was going to the show, and in the meantime there was quite a cloud coming up that evening from the west. I says to George, 'If you are going downtown, you catch a ride or walk down or go down and shut those two doors.' He knew where they were, he had been working there that afternoon, and he said he would.

"Q. On this particular evening, did you suggest any way for him to get down to the elevator? A. As I told you awhile ago, we were sitting there at the table yet. I asked George where he was going. We had went down and taken a shower, and he had cleaned up, and I figured he was going to town. He said, 'Well, I am going to the show,' and I mentioned to him, I said, 'If you are going to the show, you just go down and shut those doors. Either catch a ride or walk down, and shut those doors.'

"Q. You didn't have anything to do with how he went down— A. I told him specifically to go down——

"Q. I understand that, Mr. Abbott, but the question is, you had nothing to do with the manner in which he got down there, did you? A. No, I had nothing to do with that.

"Q. And on this 25th day of July, you had completed your day's work prior to going home to supper, hadn't you? A. Yes.

"Q. Was there any further work that you had in your mind that had to be done other than the closing of these doors down there at the elevator that night? A. There wasn't a thing.

"Q. Mr. Abbott, as a matter of fact, during the harvest season, particularly, quite often something you would think of that should have been done during the day, and you would go back to check that up? A. No, I wouldn't say that. I believe, if I am not mistaken, that is the only time we ever went back after we had really closed down the elevator."

Claimant as a witness on his own behalf, testified that nothing was said about the hours or number of hours he worked; that they never worked any special time or quit at a special time but worked until they were through dumping wheat and things were cleaned up, all of which would be done before they went home.

In addition, the following questions and answers appear as a part of his testimony:

"Q. After you had gone home to supper, was anything brought to your attention about going back down there? A. Yes, Les told me—we remembered about the doors when we seen that cloud coming up; he told me to go down and close them after supper.

"Q. At that time, George, you were on your way to carry out your brother's orders to close the doors, were you? A. Yes.

"Q. And as I understand you, when you left the house, you came downtown? A. Well, I was going down at that time to shut the doors.

"Q. You were on your way down to shut the doors? A. Yes."

As we approach consideration of appellants' first specification of error, which is that the trial court erred in adjudging the claimant sustained personal injury by accident arising out of and in the course of his employment with the respondent, let it be said there has been no attempt in our relation of the record facts to detail all the evidence. On the contrary, our summary thereof and our reference to specific portions of the testimony are made without regard to any evidence contrary to the trial court's finding with full recognition of the rule, now so well grounded in this jurisdiction as to preclude argument or debate (*Stanley v. United Iron Works Co.,* 160 Kan. 243, 160 P. 2d 708; *Lane v. St. Louis Smelting & Refining Co.,* 160 Kan. 495, 496, 163 P. 2d 362; *Burk v. American Dist. Tel. Co.,* 160 Kan. 519, 523, 163 P.2d 402); that in an appeal in a workmen's compensation cause this court is concerned only with evidence tending to support the award and does not consider any evidence which might have warranted a different or contrary conclusion.

Let it also be said that capable counsel for appellants do not seek to gainsay the rule. Neither do they attempt to avoid its application or consequences. Simply stated their position is, that notwithstanding it and giving the appellee's evidence the benefit of all inferences to which it is entitled under our decisions, the appellee has failed to establish facts sufficient to bring him within the purview of the workmen's compensation act and is therefore not entitled to any award under its provisions.

In our consideration of the issue thus raised by the appellants it should be remembered there are certain fundamental principles, often stated and somewhat elementary in character but nevertheless important, which must be ever kept in mind as it is being determined. One—although it is not our function to weigh conflicting evidence—is that the question of whether the trial court's finding and judgment is supported by substantial competent evidence is a question of law, as distinguished from a question of fact (*Brandon v. Lozier-Broderick & Gordon,* 160 Kan. 506, 508, 163 P. 2d 384; and *Holler v. Dickey Clay Mfg. Co.,* 157 Kan. 355, 139 P. 2d 846). Another is that in order to be compensable under the workmen's compensation act an accidental injury must be one "arising out of" as well as "in the course of" the employment (G. S. 1935, 44-501; *Brandon v. Lozier-Broderick & Gordon,* supra, and *Covert v. John Morrell & Co.,* 138 Kan. 592, 27 P. 2d 553). Still another is that the burden of establishing both of the elements last mentioned by

substantial competent evidence is upon the claimant (*Jones v. Lozier-Broderick & Gordon,* 160 Kan. 191, 160 P. 2d 932; *McMillan v. Kansas Power & Light Co.,* 157 Kan. 385, 139 P. 2d 854; and *Gamble v. Board of Public Utilities,* 137 Kan. 227, 19 P. 2d 729).

With the foregoing principles established we turn directly to the question of whether the record discloses the appellee has sustained the burden of proving the injury for which he claims compensation and on which the award in the court below was based occurred under conditions and circumstances which permit recovery of compensation.

At the very outset we are confronted with the provisions of G. S. 1935, 44-508 (k), which read:

"The words 'arising out of and in the course of employment' as used in this act shall not be construed to include injuries to the employee occurring while he is on his way to assume the duties of his employment or after leaving such duties, the proximate cause of which injury is not the employer's negligence."

Appellee does not even pretend the proximate cause of his injury was his employer's negligence. Neither does he contend that he would be included within the benefits of the compensation act if under like circumstances he had been injured while on his way to work in the morning, coming from work in the evening, going to and from the noonday meal, or on a personal errand. Nevertheless, he seeks to avoid the force and effect of the provisions of the foregoing quoted section of the statute on the ground they are inapplicable as to him since his evidence discloses that at the time of the occurrence of his injury he was on an errand for his employer and directly engaged in carrying out its orders in the furtherance of its business.

As supporting his position appellee cites a case which he states is the only one he has been able to discover in this jurisdiction dealing with liability in a situation where the employee has been sent on an errand by his employer and suffered injury while engaged on that mission.

In *McDonnell v. Swift & Co.,* 124 Kan. 327, 259 Pac. 695, the claimant was engaged by the company as an assistant yardmaster. His place of employment was known as the "north switch shanty." The company had provided and assigned to each employee a place to park his car. Upon arriving at work the claimant found that someone had parked their car in his space. He reported this to his foreman who told him to find out whose car it was and have it removed. Upon inquiry, he found that the car belonged to a colored

man employed in the ice-making department. He went to the ice plant and in endeavoring to get to the place where the man was working, fell into a vat of hot water and was so badly scalded that death resulted. The company contended that he "was engaged in no work of his employer at the time he was injured." The lower court held that he was, based upon the question, submitted to the jury, of whether he was directed by his foreman to go to the ice plant on a specific errand. In affirming a judgment of the lower court allowing compensation, this court said:

"The question whether he was directed to go, not the nature of the errand, was the important thing—assuming, of course, that the direction, request, or order of the foreman was one which the nature of his employment authorized him to give, and this is not seriously questioned here. The result is, the jury found that McDonnell was killed while on an errand on which his foreman had sent him. His injury, therefore, arose in the course of his employment. While the evidence on this question was conflicting, there was substantial evidence to support the jury's findings; it was approved by the trial court, and we cannot review it." (p. 329.)

The foregoing case does not uphold appellee's position. McDonnell, the claimant, was not on the way to but had arrived at the place where he assumed the duties of his employment. In the case at bar the claimant never reached that location.

Other decisions relied on by appellee as sustaining the award have been carefully examined. The factual situations in each can be distinguished and in our opinion none of them is susceptible of that construction. They will be given specific but brief consideration.

*Wise v. Central Dairy Co.*, 121 Kan. 258, 246 Pac. 501, turned upon the question of whether an injury occurred "in, on or about the factory" within the meaning of R. S. 1923, 44-505, since amended, and is not in point.

In *Kennedy v. Hull & Dillion Packing Co.*, 130 Kan. 191, 285 Pac. 536, a traveling salesman injured in an accident on a highway was awarded compensation on the ground he was required to travel daily upon the highways, which was his place of work, in the performance of the duties of his employment.

*Kirkpatrick v. Yeamans Motor Co.*, 143 Kan. 510, 54 P. 2d 960, approved allowance of compensation for injury resulting in the death of a night watchman who had been employed by the respondent and another company, to watch their used-car lots, across the street from each other, some four or five miles distant from the principal place

of business of respondent, and who was found dead between the two places of employment under circumstances indicating he had been struck by a car.

In *Mitchell v. Mitchell Drilling Co.,* 154 Kan. 117, 114 P. 2d 841, the deceased workman was a "tool pusher" who suffered injuries resulting in his death while traveling between oil wells. Recovery was based on the premise such traveling was a part of his work.

In *Matter of Grieb v. Hammerle,* 222 N. Y. 382, 118 N. E. 805, 7 A. L. R. 1075, a cigar packer left the factory after working hours to deliver some cigars for and at the request of his employer. He was killed before his errand was completed and a compensation award was sustained.

It will be noted that in the cases just mentioned questions pertaining to allowance of an award did not turn upon the proposition of whether the injury to the employee had occurred while he was on his way to assume the duties of his employment.

The final case to which appellee refers is *State C. I. Fund v. Indus. Acc. Com.,* 89 Cal. App. 197, 264 Pac. 514, noted 87 A. L. R. Anno, 252. It involved a situation where an employee sustained injury resulting in his death while returning from performing a special service for his employer outside his regular duties as salesman in leaving home after his usual working hours to unlock the door of his employer's store so that an electrician could enter and do some work. Its facts were held to create an exception to the so-called "going and coming rule" for the reason they established a service by decedent *outside of his regular duties as a salesman.* The decision, although factually closest in point of all those cited by appellee, is not decisive of the instant case.

Conceding for our purposes that at the moment of his injury appellee was on an errand for his employer and carrying out its orders in the furtherance of its business we are nevertheless, when the evidence is carefully examined, unable to hold that appellee sustained the burden of establishing facts which bring him within the scope of the act. Perhaps, since the most that can be said for his evidence is that he was a general helper at the elevator and on the way to perform work there when he was injured, a more correct statement of our conclusion is that he established facts which preclude him from its operation. The provisions of the statute (G. S. 1935, 44-508 [k]), in our opinion, are clear, unambiguous, complete in themselves and do not permit judicial welding or construction. They

mean exactly what they say, namely, that the words "arising out of and in the course of employment" *shall not* be construed to include injuries to an employee while he is on the way to assume the duties of his employment. Appellee's evidence, giving it the benefit of every inference to which it is entitled, definitely established that when injured he was on his way to perform work incident to his employment. In that situation his injury was not compensable under the act and he cannot recover in a proceeding instituted pursuant to its terms.

The conclusion just announced, so far as we have been able to determine, is based upon a factual situation entirely different from any other to be found in our decisions. The only case we have been able to discover possessing somewhat similar characteristics is *Repstine v. Hudson Oil Co.*, 155 Kan. 486, 126 P. 2d 255, which, although it supports and fortifies our opinion, is distinguishable and cannot be said to be decisive of it. There it was held:

"In a claim for workmen's compensation where the superintendent of a filling station was responsible for the money taken in at the filling station and took it to his home with him each night, and was killed in a collision with a truck on his way to open the station in the morning while he had his employer's money with him, the record is examined, and it is held that under all the surrounding facts and circumstances the accident which caused the death of deceased did not arise 'out of' his employment." (Syl.)

We have not been unmindful of appellee's claim, strenuously urged, that completion of work for the day at a regularly assigned place of business followed by a return to that place on an errand for an employer pursuant to its instruction in the furtherance of its business. creates an exception to the rule of the statute.

Obviously,. that contention has been decided by what has been heretofore stated. Notwithstanding, it is of sufficient importance to justify specific attention. On reëxamination and more critical analysis of 44-508 (k), *supra,* we find nothing to warrant us in holding there are any exceptions to its plain and unequivocal provision that the words "arising out of and in the course of employment" do not include injuries to an employee while on the way to assume the duties of his employment. So construed, under the conditions and circumstances just outlined, an employee cannot escape the result of its operation.

Neither have we overlooked the many decisions cited by appellants wherein this court has defined the phrases "in the course of employment" and "out of employment" as found in the act. We

pass them by without comment for the reason our conclusion simply means that, within the meaning of such phrases as used therein and so far as the act itself is concerned, injuries occurring on the way to assume the duties of employment are not compensable irrespective of whether they may be said to "arise out of or in the course of employment" as such words are construed in common parlance and there is, therefore, no occasion for a discussion of the niceties and perplexities of such phrases as defined in our decisions.

Nor do we ignore the force and effect of appellants' extended argument, and their numerous cited cases, dealing with the question of whether there was any causative connection between the circumstances of appellee's injury and his employment. They too, in view of our decision, need not be considered and merit little, if any, space in this opinion.

Since our decision precludes the granting of an award under the act nothing worth-while would be accomplished by proceeding with consideration of appellants' other assignments of error.

The judgment of the trial court is reversed with directions to enter judgment denying an award.

WEDELL, J. (concurring): I concur in the decision of the majority. It is my purpose merely to emphasize a few particular considerations which compel my concurrence.

In the first place, in order to avoid any possible confusion, I think it may be well to state that the case of *McDonnell v. Swift & Co.,* 124 Kan. 327, 259 Pac. 695, decided in October, 1927, and relied on by appellee, is not an authority for our interpretation of the statute presently under consideration. The statute was not mentioned by appellant in that case. It was not considered by this court. Appellant there had arrived at the scene of his employment and the question was whether at the time of injury he was engaged in the work of his employment.

It is my position a fair interpretation of the record requires us to say the undisputed evidence discloses the trip to close the doors was made to perform an unfinished duty of the day's work; if the trip is not regarded as a part of the day's work it was nevertheless specifically made to assume a duty of the employment and as such was plainly within both the letter and the spirit of the statute denying liability. To hold otherwise would defeat the reason for and the fundamental intent and purpose of the statute.

Conceding there was evidence the work on the day of the acci-

dent was, in a general way, considered finished when claimant left for his evening meal, the record clearly and without dispute discloses there was a *specific duty in connection with that day's work* which remained unfinished. The workman was injured while he was on his way to assume that duty. Lester Abbott, the local manager of the elevator and a witness for claimant, testified:

"Q. And on this 25th of July, you had completed your day's work prior to going home to supper, hadn't you? A. Yes."

On cross-examination he testified:

"On the 25th of July, they had completed the day's work prior to going nome for supper *except the closing of these doors.*" (Emphasis supplied.)

That, however, is not all of the undisputed testimony. The foreman again with commendable frankness admitted the closing of the doors was an unfinished duty of that particular day's work. That testimony was:

"Q. After you had gone home, did there *any duty* that should be performed come to your mind *that should be performed that day,* Mr. Abbott? A. Yes." (Emphasis supplied.)

The local foreman, on direct examination, further stated he specifically told claimant to perform that duty, that is, he told him to "go down and shut those doors."

To my mind the conclusion is unescapable that the testimony clearly brought this case directly within the provisions of the statute which is about as plain and comprehensive as words could make it. The statute clearly says the act ". . . shall not be construed to include injuries to the employee occurring while he is on his way *to assume the duties* of his employment or after leaving such duties, *the proximate cause of which injury is not the employer's negligence.*" (G. S. 1935, 44-508[k]) (Emphasis supplied.)

The further undisputed testimony disclosed that during the harvest season they had no regular working hours at the elevator and frequently worked until 9:00 or 10:00 o'clock at night.

But assuming the trip is not regarded as a part of the day's work the case nevertheless falls directly within both the plain letter and the spirit of the statute. The fundamental principle underlying this legislative enactment is that an injury occurring as therein described does not arise out of the hazards of the employment. That fundamental principle is the same whenever the trip to assume some duty of the employment is made whether it be in the

morning, at noon or at night. The fundamental principle is the same whether the trip to assume the duties of the employment is made at a regular or at an irregular time. There is only one circumstance under which liability is intended to attach for injury occurring to a workman while on his way to assume the duties of his employment or on his return therefrom. That is where the proximate cause of the injury is the employer's negligence.

Appellee argues courts are required to give the act a liberal interpretation. The contention merits an answer. I shall state my views. I concur completely now as I have repeatedly in the past with the statement that the act should be liberally construed. But liberally construed for what purpose? Manifestly, in order to effectuate the real, the genuine purpose and intent of the lawmakers. So, for example, in *Mendel v. Fort Scott Hydraulic Cement Co.,* 147 Kan. 719, 78 P. 2d 868, we held:

"The primary purpose and intent of the workmen's compensation act is to provide protection to the workmen, and the act must be construed with a reasonable liberality designed to effect that purpose. While courts cannot construe the act to include injuries which clearly do not arise out of the employer's trade or business, they will construe it so as to include certain work within the employer's trade or business, where reasonably possible to do so, if such construction tends to uphold rather than to defeat the apparent purpose of the act." (Syl. ¶ 2.)

But the interpretation contended for by appellee would defeat the statute here involved by creating liability under circumstances where the legislature declared liability should not attach, namely, where the injury does not arise out of the hazards of the employment and where the proximate cause of the injury is not the employer's negligence. Such an interpretation of the statute, in my opinion, is not liberal interpretation but nullification of the plain legislative purpose and intent.

In connection with this case it was interesting to ascertain the interpretation other states might have placed upon the same or similar statutes. A hurried investigation disclosed only a few other states had enacted somewhat similar statutes but no cases interpreting them were found. Further investigation disclosed there apparently was no need for such statutes in most states for the reason that their courts quite generally had already held there was no liability for an accident occurring to a workman while he was on the way to assume the duties of his employment or on his return therefrom, where the proximate cause of the injury was not the employer's negligence. A

few of such cases are *Matter of De Voe v. N. Y. State Railways*, 218 N. Y. 318, 113 N. E. 256; *McMain v. Connor & Sons Const. Co.*, 337 Mo. 40, 85 S. W. 2d 43; *London G. & A. Co. v. Industrial Acc. Com.*, 190 Cal. 587, 213 Pac. 977; *Murphy v. Board of Education*, 314 Mich. 226, 22 N. W. 2d 280; *Hills v. Blair*, 182 Mich. 20, 148 N. W. 243; *Fumiciello's Case*, 219 Mass. 488, 107 N. E. 349; *De Constantin v. Pub. Serv. Commission*, 75 W. Va. 32, 83 S. E. 88, L. R. A. 1916A 329. See, also, 1 Schneider's Workmen's Compensation Law, 2d ed., p. 748; Bradbury's Workmen's Compensation, 3d ed., p. 468; Ruegg's Employers' Liability and Workmen's Compensation, 8th ed., p. 377; Elliott's Workmen's Compensation Acts, 9th ed., p. 40; Boyd's Workmen's Compensation, p. 1064.

Whether we would agree with such decisions in the absence of our statute need not be determined. But I cannot bring myself to judicially declare liability in the face of a legislative enactment which, it seems to me, clearly discloses a contrary legislative intent and purpose.

HOCH, J., joins in the foregoing concurring opinion.

PARKER, J. (dissenting): I am unable to agree with the conclusion reached in the majority opinion but recognizing its futility and uselessness will not attempt to write an extended dissent.

The compensation act as we have often said is remedial in its purposes and under all our decisions is to be liberally interpreted with the view of effecting them. *Mendel v. Fort Scott Hydraulic Cement Co.*, 147 Kan. 719, 78 P. 2d 868; *Rupp v. Jacobs*, 149 Kan. 712, 88 P. 2d 1102; (see 160 Kan. 254); *Chamberlin v. Bowersock Mills & Power Co.*, 150 Kan. 934, 944, 96 P. 2d 684; *Murphy v. I. C. U Const. Co.*, 158 Kan. 541, 148 P. 2d 771; *Bailey v. Mosby Hotel Co.*, 160 Kan. 258, 268, 160 P. 2d 701; *Stanley v. United Iron Works Co.*, 160 Kan. 243, 160 P. 2d 708 and *Hoffman v. Cudahy Packing Co.*, 161 Kan. 345, 167 P. 2d 613.

Briefly stated, it is my view the words "shall not be construed to include injuries to the employee occurring while he is on his way to assume the duties of his employment" as used in G. S. 1935, 44-508 (k), do not contemplate an around-the-clock service in employment but have reference and are restricted to the usual and customary working hours of the industry in which the workman is employed. Such a construction, since there is evidence the claimant had quit work for the day and at the time of his injury was engaged in carry-

ing out special orders of respondent in the furtherance of its business, would sustain the trial court's finding and permit claimant to participate in the benefits of the workmen's compensation act.

HARVEY, C. J., and SMITH, J., concur in the foregoing dissenting opinion.