No. 31,994

ADELAIDE HUGHES WOODS and RUTH SEAY WOODS, *Appellees*, v. JACOB DOLD PACKING COMPANY and NEW AMSTERDAM CASUALTY COMPANY, *Appellants*.

(41 P. 2d 748)

Opinion filed March 9, 1935.

*W. A. Ayres, Austin M. Cowan, C. A. McCorkle, J. D. Fair, W. A. Kahrs* and *Robert R. Nelson,* all of Wichita, for the appellants.

*H. W. Hart, Glenn Porter, Enos E. Hook* and *Getto McDonald,* all of Wichita, for the appellees.

The opinion of the court was delivered by

DAWSON, J.: This was a compensation case.   It appears that on and prior to October 24, 1933, the late Samuel Ernest Woods, of Clovis, N. M., was a traveling salesman for the Jacob Dold Packing Company of Wichita, Kan.   His contract of employment was made in Kansas, although his field of operations was partly in northwest Texas, and included the cities of Amarillo and Dalhart. His compensation included an allowance for traveling expenses, which was calculated on the exact mileage by the most direct route between points within the trade territory to which he was assigned, but he was privileged to choose his own route of travel.

In the late afternoon of October 24, 1933, Woods had com-

pleted his canvass of customers in Amarillo and was due to call on the trade in Dalhart the next day. There were three practical routes between Amarillo and Dalhart—one which bore north, west, and angling northwest, a total distance of 90 miles; a second route which ran mainly northward to the south line of Sherman county, Texas, and thence due west into Dalhart, a distance of 125 miles; and a third, but more circuitous route, over a paved road running northeastward from Amarillo through towns or villages named Panhandle, Borger and Stinnett, thence west to Dumas where it merged with the second route—a total distance of 150 miles. These latter points en route were not within Woods' trade territory, but he had a son living in Borger whom it would be convenient for him to visit and with whom he perhaps intended to stay over night. On the shortest route there was a considerable amount of construction and repair going on at two different stretches of the highway, so that there was that additional reason why Woods might choose one of the longer routes.

In the evening of October 24 Woods started for Dalhart on the long circuitous route via Panhandle and Borger. A few miles out of Amarillo, Woods met his death in a collision of automobiles.

His employer resisted the compensation claims of his dependent widow and minor daughter. A proceeding was conducted before the compensation commissioner, where the only contested issue was whether Mr. Woods' death arose out of and in the course of his employment. The commissioner's finding constituted an affirmative answer to that question, and claimants were awarded $4,000, one-half to the widow and one-half to the daughter, payable at the rate of $18 per week, together with an allowance of $150 for funeral expenses.

The record was brought before the district court for review. That court made findings of fact and gave judgment affirming the award *in toto*, but it also decreed that the item of $150 for funeral expenses should bear interest from the date of the court's decree, April 5, 1934.

Respondent appeals, contending that the evidence established the fact that the death of Woods occurred under circumstances which showed clearly that he was on an errand of his own when he was killed, that his death did not arise out of nor in the course of his employment. We cannot assent to that contention. Woods was privileged to choose his own route in going from Amarillo to

Dalhart, and he was none the less about his master's business when he was killed, although he had chosen to go to Dalhart by the longest route so as to call on his son and possibly stay over night with him. If Woods had no other motive for choosing the longest route, it was quite reasonable that he should have selected it in view of the fact that the shorter routes were undergoing repairs and improvements. And since the record contained evidence to support the trial court's finding, this court may not meddle with it. (*Butler v. White Eagle Oil Ref. Co.*, 140 Kan. 202, 34 P. 2d 120.)

Respondents raise a minor point touching the allowance of interest on the item of $150 for funeral expenses. The compensation act does not sanction the imposition of any interest charges. As heretofore shown in *Richardson v. National Refining Co.*, 137 Kan. 473, 21 P. 2d 307, a provision in the compensation act of 1911 as amended in 1917 did allow interest on payments overdue (R. S. 44-534), but when the act was revised in 1927 (Laws 1927, ch. 232; R. S. 1933 Supp. 44-534) the provision for the allowance of interest was deliberately eliminated by the legislature. Moreover, the statute expressly declares that the reasonable expenses of burial of a deceased workman chargeable to the employer shall not exceed $150. (R. S. 1933 Supp. 44-510, Subdiv. 2 [d].) Since the compensation act is complete in itself and borrows nothing from the civil code or any other statute (*Cruse v. Chicago, R. I. & P. Rly. Co.*, 138 Kan. 117, 23 P. 2d 471, syl. ¶ 1), it seems imperative to hold that the imposition of an interest charge on the item allowed for burial expenses must be set aside. To that end this cause will be remanded to the district court for the elimination of the interest charge, and when that is done the judgment will stand affirmed. It is so ordered.