No. 36,414

WALTER BRANDON, *Appellee*, v. LOZIER-BRODERICK & GORDON and
EMPLOYERS LIABILITY INSURANCE COMPANY, *Appellants.*

(163 P. 2d 384)

Opinion filed November 10, 1945.

*James K. Cubbison,* of Kansas City, argued the cause, and *Howard E. Payne,* of Olathe, *Blake A. Williamson* and *Lee Vaughan,* both of Kansas City, were on the briefs for the appellants.

*Frank L. Bates* of Kansas City, and *John M. Langsdale,* of Kansas City, Mo., argued the cause for the appellee.

The opinion of the court was delivered by

HOCH, J.: This is a workmen's compensation case. The contentions of appellant, the respondent, are that the workman's injury did not "arise out of" his employment and that there was no substantial evidence to support the finding of total disability.

Walter Brandon, a man seventy years of age, was employed as a millwright by Lozier-Broderick & Gordon, a contractor doing extensive construction work at the Sunflower Ordnance plant at De Soto, Kan. He suffered an injury to his back when he fell while attempting to climb on the rear end of a truck. At the hearing before the compensation commissioner it was stipulated that the relationship of employer and employee existed; that the parties were under the workmen's compensation law; that the claimant's average weekly wage was $100; that the respondent had notice of the accident; that no issue as to written claim for compensation was involved, and that the claimant had suffered an accidental injury and that no compensation had been paid. The commissioner found that as a result of the accident the claimant had become totally disabled for performance of manual labor as a millwright and carpenter and would continue to be so disabled for an indefinite period in the future; that the accident arose out of and in the course of the employment, and made an award in his favor for a period not to exceed four hundred fifteen weeks payable at the rate of eighteen dollars per week subject to review and modification as provided by law, and also awarded him $500 to cover medical and hospital services. Upon appeal to the district court the same award was made. This appeal followed. The primary question, which we will first consider, is whether the accident arose out of the employment.

It is firmly established in our law that the jurisdiction of this court in workmen's compensation cases is limited by statute (G. S. 1935, 44-556) to questions of law. Appellee asserts that "what does or does not arise out of and in the course of an employment is, in each case, a question of fact." Strictly construed that is an incorrect statement. Otherwise, the many cases in which we have reviewed the trial court's finding on such questions should have been dismissed for lack of jurisdiction. It is for the trial court to find the facts upon which it bases its conclusion as to whether the accident arose out of the employment. But whether upon the conceded facts or upon the facts as validly found by the trial court the acci-

dent arose out of the employment is a conclusion of law. And while it is not our function to weigh conflicting evidence it has been said many times in our decisions that the question of whether a finding of fact was supported by competent, substantial evidence is a question of law, as distinguished from a question of fact. (*Holler v. Dickey Clay Mfg. Co.*, 157 Kan. 355, 364, 139 P. 2d 846.)

Claimant had been working for the respondent for four or five weeks prior to the accident on August 10, 1944. He lived in Kansas City and drove back and forth between his home and the plant in his own car. He also carried other passengers, regularly, for hire, and for that reason had been given a "C" gasoline ration card. On August 10 he had his riders with him. He checked in at a little before seven o'clock in the morning, received his "brass" and time card and then drove to the rationing office—a distance of about a mile and a half from the place where he had checked in—to see about getting a new tire for his car. This rationing office was maintained within the grounds of the Sunflower Ordnance project for the benefit of employees generally. There was no evidence that the respondent had any connection with the location or maintenance of the rationing office. When he reached the rationing office he found that the office did not open until eight o'clock and since his tires had to be inspected he left his car there and left his car keys and inspection slip with someone there, and then went to a bus depot which was close to the ration office and asked a guard about a way to get to where he worked. The guard told him to go to the administration office but he testified he did not go there for the reason that it was farther than to the place where he worked. Instead, he walked a quarter of a mile to the "guard shack" where all vehicles were required to stop for inspection. A truck came along with several men on it. It happened that this particular truck belonged to the respondent but it was not a truck provided for the purpose of carrying passengers. The guard asked where the truck was going and whether they—claimant and another workman—could ride. It is not contended that this guard was an employee of the respondent. Apparently—by fair inference—someone told claimant he could ride. In any event as he attempted to get on the truck at the rear end and stepped on a roller of some sort which was hanging down about eight inches from the ground, he lost his hold, fell to the ground, striking hip and elbow, and sustained the injuries upon which the compensation claim is based. In view of the conclusion presently

to be stated it is unnecessary to narrate the testimony as to the nature of his injuries or the conflicting contentions of the parties with reference to the matter.

Our workmen's compensation act covers only personal injuries "by accident arising out of and in the course of employment." (G. S. 1935, 44-501.) We are presently concerned only with the question of whether the accident was one "arising out of" the employment. We have repeatedly said that the phrases "arising out of" and "in the course of" are separate and conjunctive and that both conditions must exist in order to make the injury compensable, and that the phrase "arising out of" implies some causal connection between the accidental injury and the employment. (*Rush v. Empire Oil & Refining Co.*, 140 Kan. 198, 200, 34 P. 2d 542.) If the injury did not result directly from performance of the work for which the workman was employed it must at least have been suffered while performing some act which was normally and commonly incident to such work.

On the basis of the facts above stated it would be perfectly clear that at the time of the accident the claimant was on his way back to work from a personal errand and that there was no causal connection between the accident and the work for which he was employed. The car for which he was applying for a new tire was his own. He used it not only for his own means of reaching the place of work but for carrying other workmen to the Sunflower plant. There was no evidence that these other passengers were employees of the respondent. The evidence does not disclose whether their payments covered expenses only or provided a profit to the claimant. There was no evidence that the claimant used his own car at the request of the respondent or that the respondent paid in whole or in part for the gas or the tires or other car expense. There was no evidence and there is no contention that the guard at the "guard shack" was respondent's employee, nor that the truck was provided by respondent for carrying passengers, nor that any agent of respondent suggested its use for that purpose, nor that any of the riders on the truck when claimant attempted to get on were respondent's employees.

Appellee contends there are additional facts which must be considered in determining whether the accident arose out of the employment. Summarizing appellee's contention, it is that to the above recital must be added: (a) That claimant went to the ration-

ing office upon instructions from a foreman for the respondent; (*b*) he went on company time, without reduction in pay; (*c*) going on such errands on company time was a common practice; (*d*) various other material facts to be supplied under the doctrine of judicial notice. We will examine the contentions in the order stated.

As to the first point, appellee relies entirely upon one statement made by claimant upon first direct examination. He testified that after filling out his time card he "started up to the rationing board, pursuant'to instructions of Perry Shelton." We pass over the fact that there is no direct statement in the record as to who Perry Shelton was. It is a fair inference from all the testimony that he was a foreman or superintendent for the respondent. Upon further inquiry appellee made it very clear that what he meant was that the foreman had given *permission* for him to go to the rationing office, in line with a common practice. This was his testimony on the point:

"Q. And now on this particular day you said something about some instructions from somebody. What instructions were you talking about?—you knew where to go to get a ration— A. I never left the job without consulting the superintendent—

"Q. I am not asking you—is that what you mean to say, that you went and got permission to go to the ration board? A. I always asked before I left the job.

"Q. Is that what you mean when you say you got permission to go? A. Yes, sir.

"Q. You got permission to go during working hours, that is what you did, wasn't it? A. I told him I wanted to go.

"Q. And they said all right you can go? A. Yes, sir."

As to the respondent's permission to appellee to go on the errand on company time we cannot give to that fact the force for which appellee contends. The fact that an employer permits an employee to go on a personal errand during working time without deduction in pay certainly does not in itself make such an errand a part of the work for which he is employed. To hold that it does would be to lay down a rule the practical effect of which would be to force employers to decline such consideration to employees no matter how much they might wish to extend it. Neither employers nor insurance carriers would be willing to assume such risks. And the fact that the employer may make a practice of showing such consideration to employees should not subject him to a penalty for doing so.

This brings us to what is really the heart of the issue before us. Appellee asks us to supply by judicial notice many material facts

essential to establishing the proposition that he was not merely on a personal errand but that appellant was directly interested in having him use his own car and in having him get the tire, and that the accident happened while performing an act that should be regarded as a normal incident of the work for which he was employed.

Broadly stated it is appellee's contention that while under ordinary conditions the appellant would have no interest in the method or means used by appellee in going to and coming from his place of work, we should take judicial notice that the whole situation was changed by the unusual conditions which existed—conditions attendant upon the war emergency; that housing facilities near the plant were inadequate to take care of all employees; that public conveyances were inadequate; that appellant was interested in having appellee use his own car and in getting a new tire and in going to the rationing board for that purpose; and that by virtue of this whole situation appellee's errand was incident to his employment and that therefore the accident arose out of the employment.

There is no necessity here for extended discussion of the doctrine of judicial notice. Simply stated the rule is that what well-informed persons generally know the courts are presumed to know and that of such matters they may take cognizance without proof. The following are typical statements of the doctrine:

"The court will bring to its aid and consider, without proof of the facts, its knowledge of those matters of public concern which are known by all well-informed persons. . . . Generally speaking (it) is limited to facts evidenced by public records and facts of general notoriety. . . . Courts will take notice of whatever is, or ought to be, generally known within the limits of their jurisdiction." (31 C. J. S. 509-511.)

The doctrine does not extend to particular facts not of common notoriety and of which the court has no constructive knowledge. Judicial notice is not to be taken of facts that may be disputed by competent evidence. (31 C. J. S. 513, and cases cited, footnote 88.)

Certainly we can take judicial notice of the war emergency, of the fact that at many war plants housing and public transportation facilities have been inadequate to meet conveniently the needs of all employees. Perhaps we might take judicial notice that such conditions have existed at the particular plant in question. But in order to make such a record as appellee requires we would have to go very much further than that.

It is conceded that some employees lived near the plant and some at a distance. Appellee would have us say that his own situation

was such that it was impracticable for him to live in the immediate vicinity. It is conceded that many employees used public conveyances and many used private cars. We could possibly take judicial notice of the fact that busses ran regularly from Topeka, Lawrence, and other points for the purpose of carrying large numbers of workmen to the Sunflower plant. We certainly do not assume to say that appellee could conveniently have used one of these busses. We have no knowledge of his situation. But as far as the record discloses there may have been a bus which ran, at convenient hours, directly past his home and to the plant. On the record we cannot say whether the situation reasonably required him to use his own car or whether he used his car not merely for his own convenience but also for the laudable purpose of a profitable enterprise. On all these points no evidence was submitted.

On the question of housing appellee stresses the finding by the compensation commissioner that "certainly housing facilities in the immediate area of the plant being constructed by these respondents would not be adequate for all the employees engaged in the defense activity." There was no testimony concerning housing conditions. But assuming that the commissioner's observation as to general conditions was properly made it did not supply essential facts as to appellee's situation.

As to the payment for transportation by other regular passengers it is said in appellee's brief that "the car owners did not, as a rule, receive enough to break even, to say nothing of making this transportation for hire a matter of paying business." But there was no evidence upon the matter. Are we to take judicial notice that appellee was not one of those who was an exception to the rule? Certainly it could not well be contended that if there were workmen who chose to use their own cars and operate them for hire for the added income the enterprise would bring, any accident occurring while servicing their cars should be considered as incident to the work for which they were employed.

If we were to adopt appellee's theory of judicial notice and assume, without proof, various additional facts sufficient to show that appellant was directly interested in having appellee use his own car, we would still be faced with the question of whether the accident which happened under the circumstances as related arose out of the employment. But we do not reach that question. And being unable to make such an assumption it is unnecessary to extend this

opinion by analysis of the cases cited by the parties, all of which, along with others, have been examined. Without assuming the existence of the many facts indicated we must conclude that the accident did not arise out of the employment.

The suggested expansion of the doctrine of judicial notice would involve far more than the interests of the parties to this action. To expand the record so robustly, as urged, for the benefit of the appellee—for whose injury anyone must have a genuine regret—would be to start upon a journey far beyond the liberal interpretation of the Workmen's Compensation Act which the law enjoins and to which we are firmly committed.

In view of the conclusion above stated it is unnecessary to discuss other issues raised.

The judgment is reversed, with directions to enter judgment for the respondent.

SMITH, J. (dissenting): I dissent from the conclusion reached by the majority of the court. I agree that syllabus 2 states the correct rule. Where I differ, however, is in the conclusion that the evidence in this case does not warrant a finding that at the time this workman was injured he was performing some act which was commonly and normally incident to his work. The opinion of the majority is wrong in the assumption that it was incumbent upon the workman to prove that it was necessary for him to come to work in the car of which he was taking care when he was hurt. I think all that was necessary was for him to prove that he did come to work in that car as a matter of practice. The evidence warrants this conclusion. The evidence also warrants the conclusion the company acquiesced in his coming to work in the car and was so willing that he should come to work that way that he was allowed to look after it while being paid for the time taken. No more needs to be said. The opinion fairly sets out the evidence. I differ with the rest of the court in the conclusion I think should be drawn from the evidence.