No. 43,254

Elton Taylor, *Appellant*, v. Centex Construction Company, Inc., and United States Fidelity & Guaranty Company, *Appellees*.

(379 P. 2d 217)

Opinion filed March 2, 1963.

*George E. McCullough*, of Topeka, argued the cause, and *W. L. Parker, Jr., Robert B. Wareheim, Reginald LaBunker* and *John Carpenter*, of Topeka, were with him on the briefs for appellant.

*David H. Fisher*, of Topeka, argued the cause, and *Irwin Snattinger, Donald Patterson, C. K. Sayler* and *Jack L. Summers*, of Topeka, were with him on the briefs for appellees.

The opinion of the court was delivered by

FATZER, J.: In this workman's compensation case the examiner made an award of compensation to the claimant, which was approved by the director of workmen's compensation. Upon appeal to the district court, findings of fact were made and the court entered its conclusion of law that the accident did not arise out of and in the course of claimant's employment with Centex Construction Company, Inc., and denied an award of compensation. The claimant has appealed.

The usual preliminary features of a compensation case such as employment, being under the act, notice of the alleged accident, demand for compensation, and amount of wages, are not controverted. No point is urged as to the fact of claimant's accidental injury which occurred on August 17, 1960, or about his actual disability. The serious question presented is whether the findings of fact made by the district court were supported by substantial evidence and support the conclusion of law that the accident did not arise out of and in the course of claimant's employment with the respondent.

The findings of the district court are quoted and summarized: The claimant was employed by respondent as a cement mason foreman at respondent's job site on the Capehart Housing Project, approximately seven miles south of Topeka, and one-half to one mile west of U. S. Highway 75. On August 16, 1960, claimant suffered an eye injury while working for respondent and after reporting to work on the morning of August 17, he asked for and received permission to visit a doctor about the eye injury. Claimant left the job site sometime after 10:30 and approximately noon, driving his own pickup truck, and proceeded to Highway 75, thence north to Topeka where he visited the doctor. Upon leaving the doctor's office, instead of turning south on Highway 75 to return by the route he had come to Topeka, claimant proceeded west on Tenth Street to Fairlawn Road, where his son operates a service station. Fairlawn Road is approximately three miles west of Highway 75. Claimant stopped at the service station to have his son call claimant's wife to report the results of the visit to the doctor. While at the service station, claimant had his truck greased, and ate his lunch which he carried with him. When the truck was greased, claimant left the service station and drove south on Fairlawn Road to Twenty-first Street, turned west on Twenty-first Street and stopped at the

Silver Spur Tavern where he purchased a bottle of pop. Leaving the Silver Spur, claimant proceeded on west on Twenty-first Street to Wanamaker Road, which is one mile west of Fairlawn Road, turned south on Wanamaker Road to the Dover Road, turned east and drove to the Burlingame Road where he turned south. About one-fourth of a mile south of the intersection of the Burlingame Road and the Dover Road, claimant drove into a cloud of dust and collided with a road sweeper, receiving a serious injury to his knee and other injuries. It is for these injuries that claimant now seeks compensation. The location where the accident occurred was approximately one mile west and one-half mile north of the respondent's job site, and the time was approximately 1:00 p. m.

The claimant was paid one-half hour overtime per day by respondent for the use of his truck, but this was no longer in effect at the time of the accident, although claimant was allowed to use company gasoline to drive his truck around the job site and to and from his home.

In concluding that the accidental injury which the claimant sustained did not arise out of and in the course of his employment with the respondent, the court made the following findings upon which it denied compensation:

No. 1. ". . . that the automobile accident in which the claimant received his injury was not caused by the negligence of the employer. . . ."

No. 2. ". . . that although the claimant had been permitted to go to the doctor's office the same was not a part of his employment. . . ."

No. 3. ". . . that the claimant went to the doctor's office on his own decision over his lunch hour. . . ."

No. 4. ". . . that the claimant had further abandoned his trip to the doctor's office and had deviated from said trip, and had, for his own convenience, gone to his son's service station, where he ate his lunch and had travelled a considerable distance from Topeka, Kansas, before commencing to return to his place and employment and had not, when said accident occurred, returned to his place of employment. . . ."

In discussing the various contentions of the parties and in determining whether there was substantial evidence to support the district court's finding of fact and its conclusions of law, it is necessary to make a somewhat detailed analysis and narration of the evidence.

On June 23, 1960, the claimant suffered an injury to an eye which required medical treatment. The respondent furnished medical treatment and sent claimant to the doctor on company time and paid for the gasoline to be used in his pickup truck as

it was under the employer's direction that claimant keep his gasoline tank filled with company gasoline. It was respondent's policy to direct injured employees to report to a doctor in Topeka on company time and on company pay. The claimant reported several times to the doctor for treatment of the eye, and payment of the doctor's charges was made by the employer or its insurance carrier.

The claimant continued doing the heavy work of a cement mason even though he was foreman, and on August 16, 1960, as he came out of a building then under construction he had a sharp pain in the eye previously injured, either from something striking the eye or by some unknown cause. His eye hurt severely but he went home the night of August 16, and reported back to work at 8:00 a. m. on the morning of August 17. After reporting to work claimant spoke to Charles Mankin, his superintendent, concerning his eye injury and he was directed to go to the office of the company and get a ticket and report to Topeka to see Doctor Bridwell for treatment. He testified that he did not go to the office and get a ticket immediately, "inasmuch as we know that the doctors don't get to their offices before 10:00 or 11:00 o'clock, you can't get in to see one." There was a conflict in the testimony as to the exact time the claimant left the construction site, but the evidence showed that he went to the company office sometime beween 10:00 and 11:30 a. m. and secured the ticket authorizing him to visit the doctor.

Forbes Air Force Base lies immediately east of Highway 75 for more than the entire distance of Capehart Housing Project, and a large warehouse area lies immediately west of Highway 75 and between the base and Capehart. The evidence showed that there were three roads used by employees of respondent traveling from and to the housing project. Two roads connected with Highway 75 to the east and one road connected with a county road immediately to the west. Of the roads connecting with Highway 75, one was referred to as the "north" road and the other as the "south" road. The field office manager and the office manager of respondent testified for appellees, and both testified that at the time in question the Air Force had signs and postings around the project and along the "south" road directing employees and personnel of respondent to enter the project from the west. The office manager testified that the Air Force wanted "to eliminate, as much as possible,

trailers and trucks, and the heavy traffic through" the entrances from Highway 75. He further testified that "the west (road) was the proper route for him (claimant) to enter the project; that it is the route upon which he was hurt."

Testifying as to the route he took to Topeka and the bad road going to Highway 75, the claimant stated:

"I left the area where I was working and went down to the main office and got a slip to go to the doctor, and I tried to go out north, that road was blocked toward 75, so I turned around and went back by the office and out the other (south) road which they were working on and it was pretty near impossible to get through."

He further testified that he ended up on Highway 75 and drove to Topeka in his own pickup truck using company gasoline and was on company time and when he was still under contract with the company for the use of his truck.

Mankin testified by deposition for the respondent that he knew about the claimant's eye injury and sent him to the doctor for treatment; that he was paid for the day although he worked only part of the day; that he went to the doctor on company time; that he (Mankin) knew the claimant was using company gasoline and that claimant went to the doctor in his own truck with Mankin's permission, and that the reason for permitting claimant to use company gasoline in his truck was that,

"He run back and forth. He was all over the project looking after the work. I felt he was entitled to the gas since he was running all over the project taking care of the work, as much territory as we had to cover. I could not see that he had to furnish his gasoline because it was a good size project, and he run back and forth with the truck."

Mankin further testified that the claimant was also authorized to use company oil in his truck, however, the claimant testified he did not use it because, "it wasn't my brand of oil."

After being treated by the doctor, due to the heavy traffic on Highway 75 and the bad road that he traveled going to Topeka, claimant took an alternate route back to the work area. He drove west on Tenth Street and stopped at his son's service station at Tenth and Fairlawn where he had his truck greased, and during that period of time which was his regular lunch period, he ate his lunch. He then proceeded south on Fairlawn, west on Twenty-first Street, and stopped at the Silver Spur Tavern for a bottle of pop. He continued driving west to Wanamaker Road, followed Wanamaker Road to the Dover Road, turned east and drove to

the Burlingame Road, and was on the normal route back to the project when he suffered an accident and was severely injured. He was taken to the hospital by ambulance. The claimant made the following answers to questions asked with respect to his general route going to the project every day:

"Q. What route do you generally take going to and from the base, Centex? A. From town, I generally hit out Tenth Street to Wanamaker Road and over and in. Q. Why do you take that route? A. Well, you have so much traffic on 75 that at times you can spend an hour and a half going out on traffic. I have spent as much as two hours 25 minutes going out on 75. Q. This is during the noon hour going back? A. It was. Q. So what route did you choose to take? A. I went out Tenth to Fairlawn Road. . . . Q. All right. Now, you stopped and got your pop and you were back in your truck and you are headed back towards Centex on the normal route? A. That is right."

When inquiry was made as to why he did not go back the short route, the claimant made the following answers:

"Q. Was there anything to have kept you from turning to the left or south and going out Highway 75 to the Centex job? A. Yes, Q. What? A. Traffic for one thing and the bad road at the other end. Q. I mean, you came in that route? A. That is right. Q. And you could, of course, have gone back that route. A. Yes, I suppose a fellow could have. Q. All right. A. I can make ten minutes more time than going out 75."

There was evidence that the lunch period was from 12:00 to 12:30, and claimant testified that his accident occurred at 1:00 o'clock. However, the construction engineer on the housing project testified that he was returning from lunch and arrived at the scene of the accident very shortly after it occurred; that claimant was still in the truck, and it was approximately ten minutes before 1:00, and that the company took claimant's truck to the housing project.

We first refer to what we have designated as finding No. 2, that although the claimant had been permitted to go to the doctor's office the same was not a part of his employment. Under the facts and circumstances presented, the finding is erroneous as a matter of law.

Under our workmen's compensation act (G. S. 1961 Supp., 44-510) one of the primary duties of an employer to an injured workman is to furnish him such medical, surgical and hospital treatment as may be reasonably necessary to cure and relieve the workman from the effects of the injury and restore his health, usefulness and earning capacity as soon as possible. The liability of an employer to an employee arises out of a contract between them and the terms of the act are embodied in the contract. (*Fougnie v. Wilbert*

*& Schreeb Coal Co.,* 130 Kan. 410, 286 Pac. 396; *Leslie v. Reynolds,* 179 Kan. 422, 295 P. 2d 1076.) Section 44-518 provides that an employee must submit to medical treatment, or lose his benefits during the period that he refuses to submit to non-dangerous medical treatment.

The evidence is clear that the claimant suffered accidental injury to his eye on August 16, 1960, in the course of his employment. The respondent was obligated to furnish medical treatment, and that could only be procured at the doctor's office in Topeka. The directions of Mankin were sufficiently comprehensive to embrace all the treatment necessary to heal the eye. It would be folly to say that the claimant's trip going to and from the doctor's office did not "arise out of" the nature, conditions, obligations, or incidents of his employment. (*Pinkston v. Rice Motor Co.,* 180 Kan. 295, 303 P. 2d 197.) In Larson's Workmen's Compensation Law, Vol. 1, p. 186, it is said:

"It should not, therefore, be necessarily concluded that anything happening to an injured workman in the course of a visit to the doctor is compensable. To get this result, there should be either a showing that the trip was in the course of employment by usual tests, or that the nature of the primary injury contributed to the subsequent injury in some way. . . ."

See, also, *Fitzgibbons v. Clarke,* 205 Minn. 235, 285 N. W. 528; *Governair Corporation v. District Court* (Okla.), (1956), 293 P. 2d 918; *John v. Fairmont Creamery Co.,* 268 App. Div., 840, 50 N. Y. S. 2d 253. As previously indicated, the claimant was paid during the trip and both the trip and the treatment were authorized by the respondent. There can be no question but that securing medical treatment in Topeka was in the course of claimant's employment and we have no hesitancy in holding that the district court erred in finding that the trip to the doctor's office was not a part of claimant's employment.

A complete review of the record reveals no evidence to support finding No. 3, that the claimant went to the doctor's office on his own decision over his lunch hour. The claimant and the respondent are in accord that claimant was directed to go see the doctor in Topeka, and that it was respondent's policy to send all injured employees to the doctor for medical treatment. Although the evidence was conflicting as to the exact time of claimant's departure from the work area, all of the evidence was that he started to the doctor's office between 10:00 and 11:30 a. m. on August 17. While the evidence does not show the time the claimant arrived at the doctor's

office, how long he may have had to wait, or how long the treatment took, it is clear that after being treated by the doctor, he drove to his son's service station, ate his lunch, and after the lunch period had passed, he left the station and followed his normal route back to the work area. There being no substantial evidence to support finding No. 3, it follows that the conclusion of law based thereon was erroneous as a matter of law.

We shall combine what we have noted findings Nos. 1 and 4, since they are related with respect to application of G. S. 1949, 44-508 (k), which reads:

"The words 'arising out of and in the course of employment' as used in this act shall not be construed to include injuries to the employee occurring while he is on his way *to assume the duties of his employment* or after·leaving such duties, the proximate cause of which injury is not the employer's negligence." (Emphasis supplied.)

At the outset, the claimant concedes there was no negligence on the part of the respondent with respect to the accident in which he was injured, but he contends that the statute has no application to the case at bar, and that the district court's finding that because there was no negligence the claimant's accident did not arise out of and in the course of employment, is erroneous as a matter of law. In making the contention, the claimant asserts that there is no substantial evidence upon which the district court could find that he had abandoned his trip to the doctor's office and deviated therefrom so that at the time the accident occurred he was outside the scope of his employment and was returning "to assume the duties of his employment."

When the claimant was directed to secure medical treatment and went to the company office to get a ticket for that purpose it was understood he would drive his pickup truck, but no directions were given as to the route he should take in going to and returning therefrom. On the contrary, the evidence permits no other reasonable inference than that the employment and the authorization given claimant permitted him to travel whatever route he might select that was reasonable and practical and would not materially delay his return; that he could use his discretion in that respect, including consideration of traffic, number of stop lights, condition of the road, and incidental advantages as to such routes. In *Hilliker v. North American Van Lines, Inc.,* 207 N. Y. S. 2d 753, it was held that where the claimant was not directed to follow any prescribed route, he had the discretion to select "any

reasonable" route while his vehicle was moving in the direction of the ultimate destination of the trip. See, also, *Armstrong v. Aero Mayflower Transit Co.*, 221 N. Y. S. 2d 225, and 99 C. J. S., Workmen's Compensation, § 222, p. 747.

There is nothing to show that the claimant was not free to choose the most practical route to return to the work area. Since he received no directions as to what route to travel, he disobeyed none in selecting the route that the only and undisputed evidence disclosed to be not only the "normal route" but the "fastest route" from Topeka to the project. In *Woods v. Jacob Dold Packing Co.*, 141 Kan. 363, 41 P. 2d 748, it was said:

". . . Woods was privileged to choose his own route in going from Amarillo to Dalhart, and he was none the less about his master's business when he was killed, although he had chosen to go to Dalhart by the longest route so as to call on his son and possibly stay over night with him. If Woods had no other motive for choosing the longest route, it was quite reasonable that he should have selected it in view of the fact that the shorter routes were undergoing repairs and improvements. . . ." (l. c. 364, 365.)

In *Mitchell v. Mitchell Drilling Co.*, 154 Kan. 117, 114 P. 2d 841, it was contended that the employee had deviated from his trip and was not acting within the scope of his employment when killed. In denying the contention, it was said:

". . . We think the evidence reasonably tends to show he was acting within the scope of his employment. The mere fact he chose to travel paved highways and on that route possibly pick up a greatly needed change of clothing at his home in Great Bend, although the chosen route necessitated driving somewhat farther, did not alone constitute an abandonment of his employment. (*Woods v. Jacob Dold Packing Co.*, 141 Kan. 363, 41 P. 2d 748.)" (l. c. 123.)

Likewise, in *Bell v. Allison Drilling Co.*, 175 Kan. 441, 264 P. 2d 1069, it was contended the employee had deviated from his trip and that his injury did not arise out of and in the course of his employment. In the opinion it was said:

". . . Bell's normal route to his work where the well was to be drilled was not through Newton but took him west of there perhaps twenty miles. His employer Allison expected him to come to work on the next day with his crew. . . ." (l. c. 445.)

Moreover, the fact that claimant stopped at his son's service station to have his truck greased and to eat his lunch during the regular lunch period is no indication that he turned aside from the business of his trip to engage in some purpose of his own and thus sever the relation essential to his protection under the Workmen's

Compensation Act. He had the right, as incident to his employment, to eat his lunch during the lunch period wherever he might be on the trip (*Pinkston v. Rice Motor Co.*, supra) and to have the truck greased while he was stopped for that purpose since he was using it daily for the benefit of the respondent.

The appellees urge that the claimant is barred from recovery, and they cite and rely heavily upon *Repstine v. Hudson Oil Co.*, 155 Kan. 486, 126 P. 2d 225; *Brandon v. Lozier-Broderick & Gordon*, 160 Kan. 506, 163 P. 2d 384; *Abbott v. Southwest Grain Co.*, 162 Kan. 315, 176 P. 2d 839; *Pearson v. Electric Service Co.*, 166 Kan. 300, 201 P. 2d 643; *Murray v. Ludowici-Celadon Co.*, 181 Kan. 556, 313 P. 2d 728, and *Madison v. Key Work Clothes*, 182 Kan. 186, 318 P. 2d 991, and cases cited. The decisions are not helpful to the appellees.

In *Bell v. Allison Drilling Co.*, supra, the Repstine case and the Abbott case were cited and relied upon to deny compensation, and, speaking for the court, Mr. Chief Justice Harvey, said:

". . . We have carefully read the statute and the decisions cited and conclude that the statute and opinions are not applicable to the facts found by the court here. . . ." (l. c. 445.)

In *Blair v. Shaw*, 171 Kan. 524, 233 P. 2d 731, three employees were killed in an automobile accident while returning home from another city where they had gone to take examinations for mechanics given by the Chevrolet Division of General Motors. It was held that the examinations and trip there involved were incidental and actually a part of their employment and was contemplated by the employment itself. The Repstine case, the Abbott case, and the Pearson case were cited and relied upon to deny compensation and they were held to be inapplicable as throwing "little light on the question." As indicated in both the Bell and the Blair cases, the instant case is more nearly controlled by *Kearns v. Reed*, 136 Kan. 36, 12 P. 2d 820; *Stapleton v. State Highway Comm.*, 147 Kan. 419, 76 P. 2d 843; *Mitchell v. Mitchell Drilling Co.*, supra; *Hilyard v. Lohmann-Johnson Drilling Co.*, 168 Kan. 177, 211 P. 2d 89, and *Woods v. Jacob Dold Packing Co.*, supra, and the cases cited in the opinions of those cases. Likewise, *Murray v. Ludowici-Celadon Co.*, supra, is not helpful. There it was held that the claimant was injured in a public alley and had left the duties of his employment for the day by checking out for the day and by leaving the premises of the employment.

As previously indicated, under the attending circumstances, securing medical treatment in Topeka was in the course of the claimant's employment. There is nothing in our workmen's compensation act which demands that the injured workman take the shortest and best route to and from the doctor's office, but, as we have seen, the route selected must be reasonable and practical and one which will not materially delay his return to work. (Schneider's Workmen's Compensation Text, Cum. Supp. III, § 1680, p. 267.) It is too narrow a construction of the act to say that when the claimant passed Highway 75 and proceeded west on Tenth Street he was no longer engaged in the trip for medical attention. He drove west and south on the normal route of travel at all times and was on the "proper route for him to enter the project."

In making the trip to the doctor's office, the hazards and risks of highway travel were incidents of his employment. Moreover, the words "causal connection" certainly do not mean that the accident must result directly and immediately from the performance of work for which the workman was employed. Such a narrowed interpretation would mean that whenever a workman was not directly engaged in the actual work to be done he would be without protection of the Act. (*Hilyard v. Lohmann-Johnson Drilling Co.,* supra, p. 182.)

All the evidence was that the claimant was on his normal route at the time of his injury and there was no evidence to support the district court's findings which we have designated Nos. 1 and 4. That being the case, Sec. 44-508 (*k*) has no application, and the district court's conclusion of law that claimant's injury did not arise out of and in the course of his employment with respondent was erroneous.

The judgment is reversed with directions to reinstate the award of compensation as approved by the director of workmen's compensation.

PARKER, C. J., and PRICE, J., dissent.

SCHROEDER, J., dissenting: The trial court's finding No. 4—that claimant had abandoned his trip to the doctor's office and had deviated from said trip by going to his son's service station and a restaurant further removed from the normal route—is supported by substantial competent evidence presented in the record.

A rule to which this court purports to adhere consistently is that on appellate review in a workmen's compensation case the Supreme Court will not reweigh the evidence and make findings contrary to those of the district court, where the findings made are supported by substantial competent evidence.

Furthermore, the rules applied in reviewing a workmen's compensation case which has been determined in favor of a workman should also be applied where a decision has been made in favor of the employer. Thus, in *Schafer v. Kansas Soya Products Co.*, 187 Kan. 590, 358 P. 2d 737, it was said:

"Notwithstanding the fact this court is committed to the rule of liberal construction of the workmen's compensation act in order to award compensation to an injured workman in cases where it is reasonably possible to do so within the provisions of the act, consistency of decisions involving interpretation of the act cannot be maintained by construing it liberally in favor of compensation where the workman seeks compensation and strictly against compensation when he seeks damages. In other words, the same rule must govern a given set of facts whether invoked by an employer or an employee. (*Bright v. Bragg*, supra [175 Kan. 404, 264 P. 2d 494]; and *Shuck v. Hendershot*, 185 Kan. 673, 347 P. 2d 362.)" (p. 595.)

Simply stated, this means an employer is entitled to the benefits of a favorable finding which, in effect, denies a workman compensation, just as a workman would be entitled to the benefits of a favorable finding which, in effect, awards him compensation.

In my opinion the decision is controlled by *Madison v. Key Work Clothes*, 182 Kan. 186, 318 P. 2d 991, and cases cited therein. The case most nearly in point on the facts here presented, where a workman deviated from the normal route of his employment, is *Bell v. Allison Drilling Co.*, 175 Kan. 441, 264 P. 2d 1069. But there it must be noted the finding of the trial court was *in favor of the claimant.* Analysis of other cases relied upon by the court will disclose that the factual situations there presented readily distinguish them from the case at bar.

It is respectfully submitted the judgment of the trial court denying compensation should be affirmed.