LUCIOUS LEE, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Tootsie Roll Industries, Inc., Appellee).

First District (Industrial Commission Division)   No. 1—93—0803WC

Opinion filed May 13, 1994.—Rehearing denied June 8, 1994.

RARICK, J., dissenting.

James E. Riley, of Chicago, for appellant.

Kane, Doy & Harrington, Ltd., of Chicago (Gregory E. Ahern, of counsel), for appellee.

JUSTICE RAKOWSKI delivered the opinion of the court:

Lucious Lee (claimant) filed an application for adjustment of claim pursuant to the Workers' Compensation Act (Act) (Ill. Rev. Stat. 1985, ch. 48, par. 138.1 *et seq.*) alleging that he sustained accidental injuries on December 10, 1984, which arose out of and in the course of his employment with Tootsie Roll Industries, Inc. (employer). The arbitrator's finding that claimant's accident was not work related was affirmed by the Industrial Commission (Commission), and on administrative review, the circuit court confirmed the Commission's determination. The issue on appeal is whether the Commission erred in concluding that the claimant's injuries, which were sustained when he was coming from a doctor's appointment for treatment of a prior work-related injury, were not compensable. We affirm.

The claimant testified that at the time of the accident he worked for the employer doing general labor. On December 10, 1984, the claimant had an appointment at the clinic to have a cast removed from his thumb which he had injured while at work the previous month. Although the claimant testified that he left work around 1

p.m. for a 2 p.m. appointment and that he intended to return to work, a copy of his time card from the day in question indicated that he punched out at 3:32 p.m., which was the time he usually ended his shift. The clinic records also indicated that the claimant arrived at 4:14 p.m. and left at 4:39 p.m. After the claimant left the clinic, he started to cross the street but was hit by an oncoming vehicle and thrown to the ground. According to the police report, the time of the accident was 4:45 p.m.

The employer presented the deposition testimony of the claimant's supervisor, Edward Stephens, that he had not given the claimant a pass to leave work early for a doctor's appointment on the day of the accident.

The claimant contends that the accident which occurred on December 10, 1984, was compensable because he was engaged in an activity which was incident to his employment where he was receiving treatment for a prior work-related injury at a time and place that were determined by the employer. The Commission, however, reached the contrary conclusion that the claimant was not engaged in a work-related activity when he was injured because he completed a full shift prior to leaving work for his clinic appointment. Therefore, the claimant's injuries, which occurred after he left work, were not compensable.

■ The claimant first argues that the determination of the Commission that the claimant left work at the end of his shift was against the manifest weight of the evidence. The claimant maintains that he left work at 1 p.m. for a 2 p.m. appointment and that he was in the process of returning to work when he was injured. However, the Commission found that the claimant left work at 3:30 p.m., which was when his shift ended, and that he did not intend to return to work when he left the clinic.

In *Dexheimer v. Industrial Comm'n* (1990), 202 Ill. App. 3d 437, 442-43, 559 N.E.2d 1034, the court stated:

> "It is the province of the Commission to weigh and resolve conflicts in testimony, including medical testimony, and to choose among conflicting inferences therefrom. [Citations.] It is only when the decision of the Commission is without substantive foundation in the evidence or its finding is manifestly against the weight of the evidence that the findings of the Commission should be set aside."

(See also *O'Dette v. Industrial Comm'n* (1980), 79 Ill. 2d 249, 253, 403 N.E.2d 221.)

> "A reviewing court cannot reject or disregard permissible inferences drawn by the Commission because different or conflicting inferences may also be drawn from the same facts nor can it

substitute its judgment for that of the Commission unless the Commission's findings are against the manifest weight of the evidence." (*Martin v. Industrial Comm'n* (1992), 227 Ill. App. 3d 217, 219, 591 N.E.2d 108.) It has been observed that " '[t]he manifest weight of the evidence is that which is "the clearly evident, plain and indisputable weight of the evidence." In order for a finding to be contrary to the manifest weight of the evidence, an opposite conclusion must be clearly apparent. [Citation.]' " (*Drogos v. Village of Bensenville* (1981), 100 Ill. App. 3d 48, 54, 426 N.E.2d 1276, quoting *In re Application of County Collector* (1978), 59 Ill. App. 3d 494, 499, 375 N.E.2d 553.) Finally, " '[i]f the undisputed facts permit an inference either way *** then the Commission alone is empowered to draw the inference and its decision as to the weight of the evidence will not be disturbed on review.' " *Morgan Cab Co. v. Industrial Comm'n* (1975), 60 Ill. 2d 92, 97, 324 N.E.2d 425, quoting *Greenberg v. Industrial Comm'n* (1961), 23 Ill. 2d 106, 108, 178 N.E.2d 646.

In the case *sub judice*, the evidence relied on by the Commission was the claimant's time card, which was punched out at 3:32 p.m., the clinic records which indicated that the claimant arrived there at 4:14 p.m. and left at 4:39 p.m., and the police report which had the time of the accident at 4:45 p.m. The Commission also considered the deposition testimony of the claimant's supervisor that he did not give the claimant a pass to leave work early on the day in question. Although the claimant testified that he left work at 1 p.m. for a 2 p.m. appointment, he offered no corroborating evidence in support of his position. The Commission accepted the employer's testimony as to the time sequence of events on the day of the accident and also concluded that the claimant's testimony to the contrary was not credible. Given that the documentary evidence supported the employer's position, the Commission's decision was clearly not against the manifest weight of the evidence.

■ The claimant also argues, in the alternative, that even if his clinic appointment was at the conclusion of his shift, the injuries he sustained when he left the clinic were compensable because they resulted from an activity that was incidental to the claimant's employment. The claimant reasons that his going to and from the clinic was incidental to his employment because he was referred to that facility by the employer, it was used regularly for the treatment of other employees' work injuries, and the cost of the treatment at the clinic was assumed by the employer. Because the clinic and physician were not of his own choosing, he would not have been at the clinic on the day of the accident but for the employer's demands.

Whether an injury sustained by an employee going to or from a

doctor's office for treatment of a previous work-related injury is compensable seems to be one of first impression in Illinois. Although *Skelgas Co. v. Industrial Comm'n* (1948), 400 Ill. 322, 79 N.E. 501 (employee killed in an automobile accident while returning from an employer-scheduled doctor's appointment), is similar, there the employee had been terminated from employment three days prior to the accident. Relying upon this fact, the *Skelgas* court held:

"Undisputed facts impel the conclusion that Weymouth's employment terminated as of January 31, 1939, and, in consequence, on February 3, 1939, he was not an employee of the Skelgas Company. This being so, it follows necessarily that the accident resulting in his death was not compensable under the Workmen's Compensation Act." *Skelgas Co.*, 400 Ill. at 327.

Other States have addressed this issue with varying results. For a discussion and list of citations, see 1A. Larson, Workmen's Compensation § 13.13, at 3—573 (1992). According to Professor Larson:

"In the simple case, however, of a trip to the doctor's office necessitated by a compensable injury, the arguments put forward by the Kansas court in the *Taylor* case (*Taylor v. Centex Construction Co.* (1963), 191 Kan. 130, 379 P.2d 217) are difficult to answer. The court noted that the employer is under a statutory duty to furnish medical care, and that the employee is similarly under a duty to submit to reasonable medical treatment under the act. The provisions of the act, in turn, become by implication part of the employment contract. This being so, the better view appears to be that accidental injuries during a trip made pursuant to this statutory and contractual obligation are work connected." 1A. Larson, Workmen's Compensation § 13.13, at 3—573 (1992).

Although we agree in part with Professor Larson, we decline to adopt his reasoning *in toto*. Initially, we note that in the *Taylor* case, from which Larson draws support, the majority held that the employee was in the course of his employment when injured. He had suffered an eye injury the previous day and at 10 a.m. he received permission to go to the doctor. The accident occurred at 1 p.m. about one mile from the jobsite while the employee was en route back to work. Under these circumstances, we have no quarrel with the result in *Taylor*.

The *Taylor* court went on to address a district court finding that "although the claimant had been permitted to go to the doctor's office the same was not a part of his employment." (*Taylor v. Center Construction Co.* (1963), 191 Kan. 130, 132, 379 P.2d 217, 218-19.) It was in this context that the court employed the reasoning to which Professor Larson refers. In *Taylor*, despite the fact that the injury occurred during working hours, the district court used the fact that

the employee was at the doctor's office to deny recovery. In reversing, the Kansas Supreme Court held that an on-duty employee is not barred from recovery because he is returning from a doctor's appointment. This is not the same as saying that an off-duty employee can recover because he is returning from the doctor. Accordingly, we find *Taylor* distinguishable from the instant case.

Moreover, to adopt Professor Larson's reasoning *in toto* would open up a completely new area of employer responsibility. In some cases injured employees may receive medical treatment for months or even years after an injury.

In sum, we agree that an employee injured en route to medical treatment immediately after an injury is entitled to compensation. This result is not altered by the fact that the injury occurred after regular working hours. Beyond that point, however, each case must be decided on an individual basis.

Accordingly, the judgment of the circuit court confirming the decision of the Commission is affirmed.

Affirmed.

McCULLOUGH, P.J., and WOODWARD and SLATER, JJ., concur.

JUSTICE RARICK, dissenting:

I respectfully dissent.

While I agree with the majority with respect to when the accident occurred, I believe that the better view, as espoused by Professor Larson, is that injuries sustained while traveling to and from medical treatment for a compensable injury arise out of and in the course of employment and are compensable. As Professor Larson points out, when referring to *Taylor*, an employer is under a statutory duty to furnish medical care, and an employee is under a statutory duty to submit to reasonable medical treatment. Such duties become, by implication, part of the employment contract. Professor Larson concludes that "the better view appears to be that accidental injuries during a trip made pursuant to this statutory and contractual obligation are work connected." (1A. Larson, Workmen's Compensation, § 13.13, at 3—573 (1992).)

We have held:

> "If the injury occurs when the employee was performing acts he was instructed to perform by his employer, acts he had a common-law or statutory duty to perform, or acts he might reasonably be

expected to perform incident to his assigned duties, then the injury arose out of his employment. [Citations.]" (*Komatsu Dresser Co. v. Industrial Comm'n* (1992), 235 Ill. App. 3d 779, 786-87, 601 N.E.2d 1339, 1344.)

Our supreme court has held that in cases of traveling employees, the determination of whether an injury arises out of and in the course of employment depends upon the reasonableness of the specific conduct and whether it might normally be anticipated or foreseen by the employer. (*Humphrey v. Industrial Comm'n* (1979), 76 Ill. 2d 333, 336, 392 N.E.2d 21, 22-23.) I believe that an employer can clearly foresee that an employee could be injured while seeking medical treatment for a prior work-related injury.

The majority distinguishes *Taylor* on the basis that the claimant in *Taylor* sought medical treatment during his normal work shift. While I agree that the present case is factually dissimilar in that the employee here sought treatment after work, I see no meaningful relevance to this temporal distinction. It is contrary to the spirit and purpose of the Workers' Compensation Act to penalize an employee who waits until the end of his shift to seek medical treatment. The Workers' Compensation Act is remedial in nature and should be liberally construed to reflect its purpose. (*Mattern v. Industrial Comm'n* (1991), 216 Ill. App. 3d 653, 576 N.E.2d 539.) The more logical and better reasoned view is to relate compensability to whether the employee's course of conduct in seeking medical treatment for a work-related injury is reasonable under the circumstances. In such cases, the injury should be considered to arise out of and in the course of employment regardless of when the employee sought treatment.

I concede that this will open a new area of employer responsibility, but I believe it is a responsibility which is properly the employer's.