EMPLOYERS FIRE INSURANCE COM-PANY, one of the Commercial Union In-surance Companies, Plaintiff–Appellee,

v.

LUMBERMENS MUTUAL CASUALTY COMPANY, Defendant–Appellant.

No. 97CA0722.

Colorado Court of Appeals,
Div. II.

June 25, 1998.

Rehearing Denied Aug. 13, 1998.

Montgomery, Kolodny, Amatuzio, Dusbabek & Parker, L.L.P., Kevin F. Amatuzio, Matthew C. Azer, Denver, for Plaintiff–Appellee.

White and Steele, P.C., John M. Lebsack, David J. Nowak, Denver, for Defendant–Appellant.

Opinion by Judge CRISWELL.

Plaintiff, Employers Fire Insurance Company (Employers), which provided no-fault insurance coverage for Frank Scarpitto, recovered a judgment against Lumbermens Mutual Casualty Company (Lumbermens), the workers' compensation insurance carrier of Scarpitto's employer. The judgment was for reimbursement of amounts paid by Employers to Scarpitto for his wage loss of some $70,000 and medical expenses of some $34,000, resulting from an industrial injury suffered by him. Lumbermens appeals, asserting that Scarpitto had released it from any further liability with respect to his injuries and that, in any event, the amounts awarded by the court were improper. We affirm the judgment to the extent that it represents reimbursement to Employers of the amounts paid by it for Scarpitto's wage loss, but we vacate the remainder of the judgment and remand the cause to the trial court for its reconsideration of the amount to be awarded Employers for reimbursement for medical expenses.

Scarpitto suffered an industrial injury in 1992. He filed a claim under the Workers' Compensation Act and was paid benefits for that injury. Ultimately, he and Lumbermens fully settled that claim pursuant to an agreement by which Scarpitto released Lumbermens from any further obligations to pay anything more for that claim.

Prior to this settlement, however, Scarpitto was involved in an automobile accident while he was traveling to the office of a doctor selected by his employer for an examination and possible rating for permanent disability resulting from his industrial injury. Because he was unaware that the injuries he sustained in this accident were compensable under the Workers' Compensation Act, he did not submit a further claim under that act. Rather, he made claim for benefits to Employers under his no-fault policy.

Employers paid the benefits due under Scarpitto's policy and later, based upon §10–4–707(5), C.R.S.1997, it brought this subrogation action against Lumbermens to recover the amounts paid to him. The judgment that is the subject of this appeal resulted.

## I.

■ Lumbermens first asserts that Scarpitto's injuries received in the automobile accident were compensable under the Workers' Compensation Act only because he was on his way to be examined for injuries sustained in the previous industrial accident. Hence, it argues that any claim for those injuries was merely a part of the original claim; a new or separate claim did not arise as a result of those injuries. It concludes, therefore, that Scarpitto's release applies to any workers' compensation benefits that would otherwise be due because of those later injuries. The trial court rejected this conclusion, and so do we.

Lumbermens analogizes Scarpitto's second injury here to additional injuries or aggravated conditions that result from a claimant's weakened condition caused by an initial injury. Such injuries are compensable because they are the natural, albeit not the direct, result of the first injury. *See Standard Metals Corp. v. Ball,* 172 Colo. 510, 474 P.2d 622 (1970) (injury resulting from fall caused by weakened condition of leg due to prior injury compensable, even though fall occurred while employee was off work); *Johnson v. Industrial Commission,* 148 Colo. 561, 366 P.2d 864 (1961) (death from pneumonia that developed as a result of prior industrial injury to chest wall of employee is compensable).

■ Likewise, injuries that occur on the way to or from a physician's office for treatment for an industrial injury are considered to have occurred within the course and scope of the employee's work and are, therefore, compensable. *Excel Corp. v. Industrial Claim Appeals Office,* 860 P.2d 1393 (Colo. App.1993). And, Lumbermens concedes that the injuries received by Scarpitto here were compensable under this doctrine.

However, the underlying analysis supporting the compensability of each group of injuries differs.

As noted, if the second injury results from a weakened condition, the question is simply one of causation. If the original injury can be said to be the cause of the later injury, it is compensable; if it is not the legal cause of the later injury, it is not compensable. *Compare Standard Metals Corp. v. Ball, supra, with Post Printing & Publishing Co. v. Erickson,* 94 Colo. 382, 30 P.2d 327 (1934). *See* 1 A. Larson, *Workers' Compensation Law* §13.11 (1997).

In contrast, while the courts are not altogether uniform in their treatment of the issue, an injury occurring on the way to or from authorized examination or treatment for a previous industrial injury is generally not considered to be compensable because it was "caused" by the original injury. Rather, such an injury is compensable because the law requires an employer to furnish such services to the employee, and as a result, the journey to and from the physician's office is considered to be a part of the employment. *Taylor v. Centex Construction Co.,* 191 Kan. 130, 379 P.2d 217 (1963); 1 A. Larson, *supra,* §13.13 at 3–698. *See Excel Corp. v. Industrial Claim Appeals Office, supra,* 860 P.2d at 1394–1395 ("Because an employer is required to provide medical treatment and an injured employee is required to submit to it, a trip to the doctor's office becomes an implied part of the employment contract."). Hence, in such a case, it is not necessary to prove that the original injury caused the later injury. *Excel Corp. v. Industrial Claim Appeals Office, supra.*

Given this latter analysis, therefore, there is no good reason to distinguish between the injuries suffered by Scarpitto as the result of

his accident on the way to the doctor's office and any other later industrial injury, not resulting from his weakened condition, that might have occurred. At least for the issue presently before us, therefore, we conclude that Scarpitto's second injury would have provided the basis for a second claim; that injury did not result from his original injury, and it was not a part of his first claim. Hence, his release of Lumbermens from any further liability for benefits related to his first injury did not affect its liability for his later injury.

## II.

■ Lumbermens next argues that §10–4–707(5) limits Employers' recovery for wage loss payments to the minimum wage loss PIP benefits required under the No–Fault Act. Again, we disagree.

Section 10–4–706(d)(I), C.R.S.1997, requires that each PIP policy provide for wage loss benefits, based upon a percentage of the actual wage loss, not to exceed $400 per week for a period not exceeding 52 weeks. However, §10–4–710, C.R.S.1997, provides that this requirement is a minimum, and nothing in the No–Fault Act prohibits an insurer from issuing a policy "more extensive than the minimum coverages" required under §10–4–706, C.R.S.1997.

In contrast, under the Workers' Compensation Act, an injured employee is entitled to receive wage replacement benefits in the form of weekly temporary total disability benefits equal to 66 2/3% of that employee's average weekly wage, not to exceed 91% of the state's average weekly wage, as calculated annually by the Director of Labor and Employment. *See* §8–47–106, C.R.S.1997.

The portion of the No–Fault Act upon which Employers bases its claim, §10–4–707(5), provides that:

When a person injured is a person for whom benefits are to be paid under the "Workers' Compensation Act of Colorado," *the coverages described* in section 10–4–706(1)(b) to (1)(e) ... shall be reduced to the extent that benefits are actually available and covered under said act .... (emphasis supplied)

Under the "primacy rule" created by this statute, the workers' compensation insurer is primarily liable for the benefits due under the Workers' Compensation Act. And, to the extent payment is due under that act, the liability of the carrier providing PIP benefits is reduced. *Tate v. Industrial Claim Appeals Office,* 815 P.2d 15 (Colo.1991). *See Garcia v. State Farm Mutual Insurance Co.,* 920 P.2d 843 (Colo.App.1995); R. Laugesen, *Colorado's PIP/Workers' Compensation Primary Rule,* 19 Colo. Law. 1093 (June 1990).

Here, Scarpitto's PIP policy issued by Employers provided for greater wage loss benefits than the minimum required under §10–4–706(d)(I). Lumbermens argues that, by reference to this statute establishing minimum requirements, §10–4–707(5) intended that any subrogation claim for such a loss be limited to the amount of loss referred to in the former statute.

However, §10–4–707(5)'s reference is to the "coverages described" in §10–4–706, not to the minimum *limits* upon those coverages established by that statute.

■ Sections 10–4–706(1)(b) through 10–4–706(1)(e), C.R.S.1997, describe four different types of coverages for: medical and hospitalization expenses, rehabilitation costs, wage losses, and death benefits. These are the "coverages described" in the pertinent statute, and given the purpose for and the aim of the primacy rule established by the No–Fault Act, we conclude that the recovery by a PIP carrier under a subrogated claim against a workers' compensation carrier is not intended to be limited to the minimum monetary requirements set forth in those subsections. Rather, to the extent that the employee would be entitled to benefits under the Workers' Compensation Act, any carrier under that act must reimburse the PIP carrier for all amounts paid by it.

## III.

■ Lumbermens finally argues that the court erred in requiring it to reimburse Employers for medical expenses based upon fees that exceeded those authorized to be paid to physicians under the Workers' Compensation Act. With this contention, we agree.

We first note that the parties' assertions upon this point appear to revolve around the issue as to which of them had the burden of proof with respect to the reasonableness or unreasonableness of the fees involved. However, because the underlying question was clearly raised before and passed upon by the trial court, and because the issue is governed by statute and officially-adopted regulation of which judicial notice may be taken, *see Westfall v. Town of Hugo,* 851 P.2d 299 (Colo.App. 1993), we consider the question of the burden of proof to be largely irrelevant.

Section 8–42–101(3)(a)(I), C.R.S.1997, requires the Director of Labor and Employment to establish "a schedule fixing the fees" for all medical and hospitalization services rendered to an employee under the Workers' Compensation Act. Further, this statute provides that any charge made in excess of this fee schedule is "unlawful, void and unenforceable."

Pursuant to this statutory mandate, the director has adopted such a fee schedule. Department of Labor & Employment Rule XVIII, 7 Code Colo. Reg. 1101–3.

Because Lumbermens is liable for the payment of Scarpitto's medical and hospitalization expenses only to the extent that the Workers' Compensation Act renders it liable, we conclude that it cannot be liable for any expense covered by the director's schedule to the extent that any fee listed in that schedule is exceeded.

However, rather than applying the director's fee schedule as it existed at the time the expenses here were incurred, the trial court concluded that, because Employers had independently passed upon the reasonableness of each charge and because the purpose of the schedule was to assure that such expenses would be reasonable, the underlying purpose of the statute had been met. This, in our view, was error.

We appreciate that a comparison of each expenditure for medical or other services covered by the schedule with the scheduled fee may be a laborious task. We also recognize that neither of the parties have provided much assistance either to the trial court or to us with respect to the impact, if any, that a comparison of the expenses with the schedule would have upon the present judgment.

It is, however, a task that the law requires, and upon remand, there is no reason why the court may not direct both parties to engage in the required comparison and to file with the court, either singly or together, representations as to the results of that comparison.

To the extent that the present judgment is based upon the reimbursement to Employers of benefits paid to Scarpitto for his wage loss, it is affirmed. That portion of the judgment reimbursing Employers for medical and hospitalization expenses, however, is vacated, and the cause is remanded to the trial court for its reconsideration in light of the views expressed in this opinion and, thereafter, for the entry of an appropriate judgment.

NEY and QUINN*, JJ., concur.