No. 36,077

R. M. Stewart, *Appellee*, v. Mabee Oil & Gas Company, *Appellant*.

(147 P. 2d 731)

Opinion filed April 8, 1944.

*Mark H. Adams*, of Wichita, argued the cause, and *Charles E. Jones, O. A. Witterman*, both of Wichita, *Harry H. Rogers* and *Logan Stephenson*, both of Tulsa, Okla., were on the briefs for the appellant.

*Glenn Porter*, of Wichita, argued the cause, and *Getto McDonald, Dwight S. Wallace* and *William Tinker*, all of Wichita, were on the briefs for the appellee.

The opinion of the court was delivered by

Smith, J.: This was an action for overtime, liquidated damages and attorneys' fees under the provisions of the Federal Fair Labor Standards Act, 29 U. S. C. A. par. 201 *et seq.* Judgment was for the plaintiff. Defendant appeals.

The plaintiff alleged his employment by defendant from January 1, 1939, to May 17, 1941; that he was employed variously as a driller and occasionally as a tool pusher. He alleged that during this time the defendant failed to comply with the wage provisions of the Federal Act and as a result owed him $1,119.11 more than the amount actually paid him; that he was entitled to an additional amount equal to this as liquidated damages and to a reasonable attorneys' fee. The prayer was for judgment for $2,238.22 and for a further judgment for $750 as attorneys' fees. He attached an exhibit to his petition which he alleged set out the number of hours

he worked each week and the amount of overtime due him for each week.

The defendant admitted that it was engaged in the oil business; neither admitted nor denied that the oil produced was being shipped in interstate commerce and denied specifically that the plaintiff worked the hours set out in his exhibit; alleged that the claim was barred by the statute of limitations and that the plaintiff had accepted the wages paid him and was, therefore, estopped from bringing this action.

The reply was a general denial.

At the trial the plaintiff testified that he was hired to work for defendant by the day; that a day was eight hours and in the oil field vernacular was called a tower. The Fair Labor Standards Act went into effect October 25, 1939. The plaintiff introduced three exhibits. Exhibit 1 showed the number of towers he worked each week from October 25, 1939, to December, 1939. Exhibit 2 did the same thing for 1940. Exhibit 3 did the same thing for January, 1941, to May 18, 1941. These exhibits were a record which plaintiff himself had kept. As an example it showed for the week beginning Monday, October 23, 1939, that he worked a tower each day, that is, there was the figure "23" then the word "Monday" and then the figure "1." Also appearing on this exhibit were the capital letters "R. N." These letters indicated that for that week the work he did was "roughnecking" work for which he was paid a certain definite price. The exhibit for the rest of the weeks is the same except that occasionally he wrote down on the exhibit the figures "750" or "850," which indicated that he worked one tower on the day those figures appear since those figures showed the wages he received for whatever kind of work he did that day and that he worked one tower or two as the figures showed. He offered no written record to indicate that he worked any specific number of hours in any day or week other than the above.

If this record be taken at its face value then for the week beginning October 23, 1939, he worked fifty-six hours. This would be fourteen hours overtime since the maximum number of hours to be worked before overtime must be paid at that time was forty-two. That is what the court allowed him for that week. The court followed a similar practice for other weeks.

The dispute arises because the defendant argues that this does not constitute evidence that the plaintiff worked any definite num-

ber of hours in any week. The argument arises because of some testimony of the plaintiff with reference to this record. His counsel asked him the following question:

"Q. During that time, before the 25th of October when the Wage and Hour Act came into effect, you were being paid so much for each eight hours?"

His answer was: "So much for each tower."

He then went ahead to state that he sometimes worked two towers in twenty-four hours and when he did that he would get twice as much for what he did as if he worked only eight hours. He testified with reference to various days as shown on his record that the language and figures on the record showed that he worked some days eight hours and some days ten hours. On cross-examination he stated that each day he signed a report that did not show the number of hours he worked but merely showed that he worked a tower. He testified that regardless of the number, whether he worked six, eight or four hours, he signed up for eight full hours. His testimony was, in part, as follows:

"Q. Regardless of the number of hours you stayed out, you always signed up for eight full hours? A. Signed up for the tower when you went out; yes, sir.

"Q. That is what I am asking. Whenever you went out, if you stayed out one hour, when you got ready to leave you signed for an eight-hour tower, didn't you? A. If I was that lucky for an hour.

"Q. Three or four hours? A. Yes, sir."

Later he testified that on his exhibits 1, 2 and 3 where he marked one tower or two towers he claimed credit for eight hours on each tower. He then testified as follows:

"Q. Some of those towers you didn't spend eight hours on, did you? A. If you go out you are supposed to get a tower.

"Q. Whether you stay one hour or two hours? A. Yes, sir.

"Q. You haven't designated which one of those towers you just spent an hour or two? A. It doesn't state in there, no.

"Q. Do you have any record that would show the actual hours that you worked? A. You are supposed to get a tower every time you go out.

"Q. I understand, but I am asking you, please, do you have any other record than those? A. I do not.

"The Court: Were you paid for a tower at the time by your checks? A. One tower; yes, sir."

At various times he testified to about this same effect on his cross-examination.

His son was called to the stand. He had worked for the same company during this time. He testified as to various practices and on cross-examination he testified as follows:

"Q. You stated, as I understand it, that whatever record of your time was kept was kept on the tower basis, is that correct? A. Yes, sir.

"Q. And when you say a tower, at that time you assumed that the tower was eight hours, whether or not you worked eight hours, isn't that correct? A. Yes, sir.

"Q. So any record that you may have will reflect the towers but not the hours you worked, isn't that correct? A. Yes, sir."

Another witness for the plaintiff testified, amongst other things, as follows:

"I was employed as a roughneck and as a mechanic. My time was usually kept in towers. If I was called out on the job to repair a motor or something, I would go out and repair the motor and usually turn in a tower. Sometimes I worked more than one tower during the day. If I worked twelve or fourteen hours I would usually get credit for two towers."

Counsel for the appellee calls our attention to the fact that the plaintiff testified categorically that he worked eight hours on certain days about which he was asked. It is only fair to say that when he was doing this he was testifying from the record about which we have spoken.

The petition was written under the theory that there had been a failure on the part of the defendant to pay the plaintiff the reasonable minimum wages. However, no effort was made to prove such a thing. The only matter in dispute at the trial was whether the plaintiff had worked more than forty-two or forty hours in any one week as the case might be. Some of the time he was working the maximum number of hours—forty-two and part of the time it was forty. The only item for which judgment was given was the alleged overtime. There was no question but that he was paid what he claimed to be due him for the number of hours he worked exclusive of overtime.

The trial court inquired of counsel for the defendant as to whether or not the defendant intended to present any evidence. Upon being informed that the defendant desired to stand on the demurrer to the evidence, the court took the cause under advisement. Judgment for plaintiff was entered, for $460.99 for unpaid wages, an equal amount for damages and attorneys' fees.

Defendant argues first on appeal that the court erred in overruling defendant's demurrer to plaintiff's evidence.

There is no deep mystery about the Fair Labor Standards Act. It contains many provisions with reference to labor practices. The ones with which we are concerned are that a work week shall consist of forty hours between certain dates and forty-two hours be-

tween certain other dates and that when an employee works more than that number of hours in a week he must be paid the regular wage per hour plus one-half that much in addition. This is known in the vernacular as time and one-half for overtime. It also provides that the employer who thus fails to pay a man the time and one-half for overtime shall in addition to a judgment for the amount actually due the workman be assessed an equal amount as liquidated damages and that the employer shall be compelled to pay the attorney's fees for any plaintiff that is compelled to bring an action to collect money due him on account of the provisions of this act. Under such a statute the burden is upon the plaintiff to prove that he worked more than the maximum hours in any week or that he was not paid the minimum wage. It is not different from any other case where the burden of proof is on the plaintiff. See *Jackson v. Derby Oil Co.*, 157 Kan. 53, 139 P. 2d 146. There seems to be no dispute on the part of any one that the plaintiff in this case was hired by what the oil field fraternity calls the "tower;" that a tower consists of eight hours work; that a laborer was paid for a tower no matter whether he actually worked fewer hours than eight.

It is easy to see why this practice was followed in the oil field. Naturally if a driller or roughneck, as the case may be, left his home and was taken to some place at little distance he was deprived of the opportunity to work for anybody else during that time; it would not be possible for him to make any arrangements by which he could have other employment, so out of fairness to everyone the practice grew up. The practice probably grew up to allow for an eight-hour tower when a man was taken out on a job. From that it was an easy step to allow for two towers if he worked as much as ten hours at any one time. That is what the evidence in this case clearly showed was the practice. When the wages and hours act was enacted it was evidently not drafted to cover a practice such as this. At any rate since the plaintiff himself testified that he was paid for a tower, that is, eight hours, whether he worked four hours or eight on that particular day and that he was paid for two towers if he worked as much as ten hours or twelve in any one day, his notation on his exhibit for Monday, October 23, 1939, for instance is no proof at all that he worked eight hours that day. He may have worked two, four, six or eight hours. He did not testify that he knew of his own recollection if he worked eight hours that day. The same is true of every exhibit upon which the plaintiff depended to recover.

Plaintiff cites many cases where we have said on a demurrer to evidence we would not weigh evidence and we would not scrutinize differences between direct examination and cross-examination and that everything testified to by the plaintiff and his witnesses would be taken as true and all reasonable inferences drawn in favor of the theory of the plaintiff. There are many cases holding to that effect in our reports.

In this case, however, there is no dispute in the evidence. According to the testimony, the plaintiff himself testified that the exhibits upon which he depended did not reflect the number of hours he worked on any day or in any week. In order to reach such a conclusion we have to assume that he worked for eight full hours for every tower he claimed and he himself testified not once but several times that such was not the case. He seems to have been rather fair in his testimony. We have said that where a party testified to facts which preclude his recovery the effect may not be avoided. (See *Bell v. Johnson*, 142 Kan. 360, 46 P. 2d 886.) We have also said in *Jackson v. Derby Oil Co.*, supra, that judgment in a case under the Fair Labor Standards Act cannot rest upon guess, speculation or suspicion. This was not a new statement at the time we made it in that case. It has been said many times that in order for a plaintiff to recover under the Fair Labor Standard Act he must prove his case with reasonable certainty. See *Ralston v. Karp Metal Products Co.*, 179 Misc. 282, 38 N. Y. S. 2d 764; also *Clevenger v. Ritter Lumber Co.*, 294 Ky. 764, 172 S. W. 2d 625.

It is true the court made findings of fact that the defendant worked a certain number of hours in certain specified weeks. We have scrutinized this record carefully and cannot find any evidence at all upon which the court made such a finding.

The judgment of the trial court is reversed with directions to enter judgment for the defendant.