No. 45,716

Joyce Razey, Elmer J. Wiles, and Walter Schroeder, *Appellants,*
v. Unified School District No. 385, *Appellee.*

(470 P. 2d 809)

Opinion filed June 13, 1970.

*Tom Harley,* of Harley and Grist, of Wichita, argued the cause, and *George E. Grist* of the same firm was with him on the brief for the appellants.

*Paul M. Buchanan,* of Weigand, Curfman, Brainerd, Harris and Kaufman, of Wichita, argued the cause, and *Lawrence E. Curfman* of the same firm was with him on the brief for the appellee.

The opinion of the court was delivered by

Harman, C.: This action by three plaintiffs is for overtime wages, liquidated damages and attorneys' fees under the Fair Labor

Standards Act of 1938, or, in the alternative, for compensation pursuant to their contracts of employment as custodians.

Separate claims filed by plaintiffs were consolidated and heard in trial to the court. At the conclusion of plaintiffs' evidence the trial court sustained defendant's motion for involuntary dismissal. This appeal ensued.

Appelants' evidence revealed the following: Appellee, Unified School District No. 385, commonly known as the Andover district, embraces territory in Butler and Sedgwick counties. It has two school buildings to be maintained by custodial work. The new building contains fifteen rooms consisting of a cafeteria, kitchen, shop, band room, music room, drafting room, three practice rooms, boiler room, three rest rooms and two other rooms. The old building has twenty-two normal size classrooms, three home economic rooms, gymnasium with stage, halls and stairways. The classrooms contain the standard school equipment. The two buildings have about 154 windows.

All three appellants were employed as custodians by appellee during the time for which they seek overtime wages. Appellant Wiles was employed as the head custodian. His contract and that of appellant Razey were written. Appellant Schroeder's contract was oral. Other custodians were employed on a part time basis.

The contracts of Wiles and Razey, dated June 5, 1967, and July 10, 1967, respectively, stated the duties expected of each and his salary based upon a forty-hour work week up to a certain date at a specified hourly rate, and thereafter salary based upon a forty-two hour week at a specified hourly rate. Both contracts contained the following provisions:

"2. . . .

"b. Authorized overtime shall be paid at 1½ times the hourly earnings.

. . .

"5. The custodian shall work under the direction of the superintendent of schools or the principal of the school and all communication between the custodian and the Board shall be through the school administrator."

On November 1, 1967, the contract of appellant Wiles was re-negotiated in view of the overtime he had been working so as to stabilize his total monthly wage at about $525.00. This second contract was the same as the first except his hourly wage for a forty-hour work week was reduced and the contract contained the following: ". . . may work up to 60 hours per week authorized."

Appellant Schroeder worked from about January 2, 1968, to about February 4, 1968, by reason of an oral agreement with the school superintendent, Harold McCreight.

Appellants Wiles and Razey testified that when they were employed they were told by the superintendent the work was there to be done and it had to be done but not to turn in any overtime unless authorized by him; that the district had to comply with the federal wage and hour law which was in the process of being construed. Appellants found it impossible to do the work expected of them in the regular work week provided in their contracts and as a consequence worked overtime. Wiles began keeping a separate private record of the actual hours worked each day by Razey and himself. Schroeder kept his own record. Some of these overtime hours were presented to Superintendent McCreight—some were not. Each month appellee paid a certain amount of overtime wages as authorized by McCreight. Evidence was adduced as to the number of hours each appellant worked and the nature of the work done. Each contends he is entitled to overtime pay under the Fair Labor Standards Act for those hours for which he has not been paid.

In dismissing appellants' action the trial court held the act "cannot apply to a purely local secondary school which is not engaged in interstate commerce." Hence the first question to be determined is the application of the act under the evidence adduced.

A brief resume of the Fair Labor Standards Act (29 USCA § 201, et seq.) may be helpful. As originally enacted it required every employer to pay each employee engaged in interstate commerce or in the production of goods for interstate commerce a certain minimum hourly wage and to pay at a higher rate—time and a half—for work in excess of a specified maximum number of hours per week. The act defined the term employer so as to exclude any state or political subdivision of a state. As initially construed, it was the individual activities of the particular employee, and not those of the employer, which determined whether the employee was engaged in interstate commerce or in the production of goods for interstate commerce. In 1961 Congress enlarged the coverage to include each employee who in any work week is employed in an enterprise engaged in interstate commerce or in the production of goods for interstate commerce (29 USCA § 206 [b]). In 1966 Congress again amended the act. To the list of employer activities covered it added, among others, the operation of an elementary or

secondary school regardless of whether such school is public or private or operated for profit or not for profit, and it modified the definition of employer so as to remove the exemption of the states and their political subdivisions with respect to employees of schools 29 (USCA 1970 Cum. Pocket Part, § 203 [s] [4]).

In *Maryland v. Wirtz*, 392 U. S. 183, 20 L. ed. 2d 1020, 88 S. Ct. 2017, the court considered these amendments. It determined the effect of the 1961 amendment containing the "enterprise concept" was to extend protection to the fellow employees of any employee who would have been protected by the original act, but not to enlarge the class of employers subject to the act.

As to the 1966 amendment the court stated:

"In order to be covered by the Act, an employer . . . school must in fact have

'employees engaged in commerce or in the production of goods for commerce, including employees handling, selling, or otherwise working on goods that have been moved in or produced for commerce by any person. . . .' 29 U. S. C. § 203 (s) (1964 ed., Supp. II)." (p. 200.)

The burden of making the requisite showing is upon the employee claiming the benefits of the act. (*Warren-Bradshaw Co. v. Hall*, 317 U. S. 88, 87 L. ed. 83, 63 S. Ct. 125; *Jackson v. Derby Oil Co.*, 157 Kan. 53, 139 P. 2d 146; *Stewart v. Mabee Oil & Gas Co.*, 158 Kan. 388, 147 P. 2d 731).

Appellants concede the correctness of the foregoing principles. They also concede their evidence at trial did not show that any materials, supplies or equipment used by the school came from sources outside the state of Kansas. Their evidence went only so far as to describe the buildings in which their custodial duties were performed. They now request this court, pursuant to K. S. A. 60-412 (c), to take judicial notice, as a matter of common knowledge, that all of the building materials, electrical equipment and fixtures, school desks, laboratory equipment, supplies, erasers, chalk, etc., are not manufactured or produced within the state of Kansas and of necessity some of them have to be imported from outside the state. Appellants made no such request of the trial court nor have they furnished information relevant to the propriety of taking such judicial notice and to the tenor of the matter to be noticed, as contemplated by K. S. A. 60-412 (d). Appellee denies its employees had the requisite engagement in interstate commerce during the time in question.

Courts shall take judicial notice of such specific facts and propositions of generalized knowledge as are so universally known that

they cannot reasonably be the subject of dispute (K. S. A. 60-409 [a]), and they may judicially notice such facts as are so generally known or of such common notoriety within the territorial jurisdiction of the court that they cannot reasonably be the subject of dispute (60-409 [b] [3]), and also specific facts and propositions of generalized knowledge which are capable of immediate and accurate determination by resort to easily accessible source of indisputable accuracy (60-409 [b] [4]). It should be noted the taking of judicial notice under 60-409 (b) is permissive, but not mandatory, as to the things therein mentioned, absent compliance with 60-409 (c) (Gard's Kansas Code of Civil Procedure, p. 375), which provides:

"Judicial notice shall be taken of each matter specified in subsection (b) of this section if a party requests it and (1) furnishes the judge sufficient information to enable him properly to comply with the request and (2) has given each adverse party such notice as the judge may require to enable the adverse party to prepare to meet the request."

K. S. A. 60-410 (c) provides:

"If the information possessed by or readily available to the judge, whether or not furnished by the parties, fails to convince him that a matter falls clearly within section 60-409, or if it is insufficient to enable him to notice the matter judicially, he shall decline to take judicial notice thereof."

In *Brandon v. Lozier-Broderick & Gordon*, 160 Kan. 506, 163 P. 2d 384, this court stated:

"Under the doctrine of judicial notice courts take cognizance without proof of facts known generally by well-informed persons, but not of particular facts not of common notoriety, of which they have no constructive knowledge, or which may be disputed by competent evidence." (Syl. ¶ 3.)

The difficulty here is manifest. Wholly aside from any question of ultimate consumer limitation (which for want of facts we could not in any event decide), we simply cannot say it is indisputable that during the particular work weeks in question appellee had employees engaging in interstate commerce or in the production of goods for interestate commerce within the meaning of the act. We are cited to no cases, and are aware of none, where the doctrine of judicial notice has been so far extended.

Appellants would take comfort from an isolated expression used in *Maryland v. Wirtz*, supra. Taken in complete context, we think that decision, however, cautions against that which appellants would invoke here. That suit by a number of states and one school district was for declaratory judgment and injunctive relief and involved operation of both hospitals and schools. It was stipulated

the state of Maryland as well as the other plaintiff states had, in their operation of schools and hospitals, spent large sums of money for supplies and equipment in out-of-state purchases. The trial court declined to issue either an injunction or a declaratory judgment. In affirming the trial court's refusal to issue judgment declaring the plaintiffs had no employees engaged in commerce or in the production of goods for commerce, including employees handling, selling or otherwise working on goods that have been moved in or produced for commerce by any person, the court stated:

"Appellants ask us to declare that hospitals and schools simply have no such employees. The word 'goods' is elsewhere defined to exclude 'goods after their delivery into the actual physical possession of the ultimate consumer thereof other than a producer, manufacturer, or processor thereof.' 29 U. S. C. § 203 (*i*). Appellants contend that hospitals and schools are the ultimate consumers of the out-of-state products they buy, and hence none of their employees handles 'goods' in the statutory sense.

"We think the District Court was correct in declining to decide, in the abstract and in general, whether schools and hospitals have employees engaged in commerce or production. Such institutions, as a whole, obviously purchase a vast range of out-of-state commodities. These are put to a wide variety of uses, presumably ranging from physical incorporation of building materials into hospital and school structures, to over-the-counter sale for cash to patients, visitors, students, and teachers. Whether particular institutions have employees handling goods in commerce, cf. *Walling v. Jacksonville Paper Co.*, 317 U. S. 564, may be considered as occasion requires." (pp. 200-201.)

We cannot supply the deficiency as requested, and in its absence must conclude the trial court properly denied relief under the Fair Labor Standards Act.

Appellants further assert the trial court erred in denying them alternative relief based on appellee's breach of the contracts of employment by failure to pay compensation for overtime performed. Appellants contend that in sustaining a motion for involuntary dismissal as to this claim the trial court wrongfully weighed and evaluated evidence and disregarded evidence favorable to their cause. In support of this argument they cite paragraph 2 of the syllabus in *Pennsylvania National Mutual Cas. Co. v. Dennis*, 195 Kan. 594, 408 P. 2d 575. We shall not repeat that upon which appellants rely. Suffice it to say the rule therein announced was, in order to bring our practice into conformity with the federal practice, specifically overruled in *Mackey-Woodard, Inc. v. Citizens State Bank*, 197 Kan. 536, 419 P. 2d 847, in which this court held:

"Where the defendant in an action tried to the court without a jury moves for involuntary dismissal of the action at the close of the plaintiff's case pursuant to the provisions of K. S. A. 60-241 (*b*), based on the ground that upon

the facts and the law the plaintiff has shown no right to relief, the trial judge has the power to weigh and evaluate the evidence in the same manner as if he were adjudicating the case on the merits and making findings of fact at the conclusion of the entire case. . . ."

See also *Waterstradt v. Board of Commissioners*, 203 Kan. 317, 454 P. 2d 445.

Appellants Wiles and Razey had contracts providing that authorized overtime was to be paid at one and one-half times the regular hourly rate. Their contracts required their overtime to be authorized either by the superintendent or the school principal. Mrs. Razey was very vague in her testimony as to the overtime she may have worked. The only record offered in her behalf was that kept by Wiles who had no power to authorize overtime work for her. Apparently he did not keep a daily log of her overtime but later struck an average based upon the total period of time she was employed. She conceded Wiles' record was incorrect. She was paid for all the overtime hours she turned in. Wiles was paid for the overtime performed by him which was authorized by the superintendent. No authorization for any other overtime performed by either Wiles or Razey was shown.

Appellant Schroeder had no contract which provided he was to be paid overtime and he did not turn in any overtime. No one told him not to turn in overtime—he just did not turn it in and he made no demand for it prior to filing his lawsuit. He was paid for time he turned in. He testified the work was there to be done and doing it was "my own idea".

A specific element of appellants' contracts was that overtime hours to be compensable should be authorized. Having failed to show this authority they cannot recover (*Jackson v. Derby Oil Co.*, 157 Kan. 53, 139 P. 2d 146; *Gale v. Fruehauf Trailer Co.*, 158 Kan. 30, 145 P. 2d 125).

One further matter remains for consideration. After the filing of appellants' designation of record, appellee filed a counter designation which included parts of the record essential to a determination not included in appellants' designation. However, the counter designation specified, in lieu of appellants' narrative statement of the testimony, all of the testimony in verbatim question and answer form, consisting of 108 pages of transcript. Appellee made no attempt to put this testimony in narrative form or otherwise shorten it. Under our rule No. 6 (c) & (e) (203 Kan. xxv) this type of designa-

tion was unnecessary and unwarranted. For this breach, the costs of the entire record on appeal will be assessed one-half to appellee and one-half to appellants, balance of costs to be assessed against appellants. (See *Johnston, Administratrix v. Ecord,* 196 Kan. 521, 412 P. 2d 990; *McElhaney v. Rouse,* 197 Kan. 136, 415 P. 2d 241).

The judgment appealed from its affirmed.

APPROVED BY THE COURT.